# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

    JON CHRISTOPHER EVANS,                          CASE NO. 09-03763-NPO

    DEBTOR.                                               CHAPTER 7

JOINTLY ADMINISTERED WITH RELATED CASES

DEREK A. HENDERSON, TRUSTEE                        PLAINTIFF
FOR THE BANKRUPTCY ESTATE OF
JON CHRISTOPHER EVANS AND
JOINTLY ADMINISTERED RELATED
CASES

V.                                                     ADV. PROC. NO. 10-00005-NPO

COMMUNITY BANK OF MISSISSIPPI,                 DEFENDANTS
BANCORPSOUTH BANK, FIRST BANK,
STATE BANK & TRUST COMPANY,
BANK OF YAZOO CITY, BANK OF THE
SOUTH, CITIZENS NATIONAL BANK
OF MERIDIAN, HOLMES COUNTY
BANK & TRUST COMPANY, BANK
FIRST FINANCIAL SERVICES,
RENASANT BANK, METROPOLITAN
BANK, FIRST COMMERCIAL BANK,
NATIONAL BANK OF COMMERCE,
GUARANTY BANK & TRUST
COMPANY, CADENCE BANK,
BRITTON & KOONTZ NATIONAL
BANK, WACHOVIA BANK, SOUTH
TRUST BANK, OMNI BANK,
MERCHANTS & PLANTERS BANK,
FIRST BANK OF MCCOMB, HERITAGE
BANKING GROUP, THE CARTHAGE
BANK, BANKPLUS, UNION PLANTERS
BANK, PEOPLES BANK & TRUST
COMPANY, FIRST TRUST BANK FOR
SAVINGS, FIRST ALLIANCE BANK,
FIRST STATE BANK, FIRST SECURITY
BANK, PATRIOT BANK, TRUST ONE

**BANK, FIRST TENNESSEE BANK,
BANK OF BARTLETT, BANK OF
AMERICA, MERCHANTS & FARMERS
BANK, BANK OF FOREST, COPIAH
BANK, CONSUMER NATIONAL BANK,
REGIONS BANK, MISSISSIPPI VALLEY
TITLE INSURANCE COMPANY AND
OLD REPUBLIC NATIONAL TITLE
INSURANCE COMPANY**

### MEMORANDUM OPINION AND ORDER ON MOTION OF FIRST SECURITY BANK FOR PARTIAL SUMMARY JUDGMENT AND MISSISSIPPI VALLEY TITLE INSURANCE COMPANY AND OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY'S <u>CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

There came on for consideration the (1) Motion of First Security Bank for Partial Summary Judgment (the "FSB Motion") (Adv. Dkt. 148) and the Memorandum in Support of Motion of First Security Bank for Partial Summary Judgment (Adv. Dkt. 149) filed by First Security Bank ("FSB"); (2) Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Response in Opposition to First Security Bank's Motion for Partial Summary Judgment and Cross-Motion for Partial Summary Judgment (the "Title Companies Cross-Motion") (Adv. Dkt. 210) and Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Response to First Security Bank's Itemization of Facts (Adv. Dkt. 211) filed by Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company (the "Title Companies"); (3) First Security Bank's Response to [#210] Title Insurance Companies' Cross Motion for Partial Summary Judgment (Adv. Dkt. 228) filed by FSB; and (4) Title Companies' Reply in Support of Cross-Motion for Partial Summary Judgment Against First Security Bank (the "Title Companies Reply") (Adv. Dkt. 239) filed by the Title Companies in the above-referenced adversary proceeding (the "Adversary").

Having reviewed the pleadings and all the exhibits attached thereto, together with other pleadings on file and the briefs submitted by the parties, the Court finds for the reasons set forth below that FSB is not entitled to partial summary judgment as a matter of law on its breach of contract claims against the Title Companies and that the FSB Motion should be denied. The Court further finds that the Title Companies are entitled to partial summary judgment as a matter of law on FSB's claim for breach of contract and that the Title Companies Cross-Motion should be granted.[1]

## Jurisdiction

This Court has jurisdiction over the subject matter of and the parties to this proceeding pursuant to 28 U.S.C. § 1334. This matter is a core proceeding[2] as defined in 28 U.S.C. § 157(b)(2)(O). Notice of the FSB Motion and the Title Companies Cross-Motion was proper under the circumstances.

---

[1] The following constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

[2] In the Amended Crossclaim Against Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company (the "Amended Cross-Claim") (Adv. Dkt. 135), FSB likewise alleges that "[t]his is a core proceeding under 28 U.S.C. § 157." However, in the Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Answer and Affirmative Defenses to Amended Cross-Claim of First Security Bank (Adv. Dkt. 142), the Title Companies allege that "[t]his matter is non-core under 28 U.S.C. § 157(b)(2)." The Court need not address the core/non-core distinction because the parties clearly have consented to the final adjudication by this Court of all of their claims. *See* 28 U.S.C. § 157(c)(2); *see also* Oxford Expositions, LLC v. Questex Media Group (In re Oxford Expositions, LLC), No. 11-01095-DWH, 2011 WL 4074028 (Bankr. N.D. Miss. Sept. 13, 2011) (holding that power to consent under 28 U.S.C. § 157(c)(2) remains undisturbed after Stern v. Marshall, 131 S. Ct. 2594 (2011)). Notably, the Title Companies have not mentioned in any of their numerous pre-trial filings that they have withdrawn their consent to this Court's authority. *See* Fed. R. Bankr. P. 7012(b).

**Facts**

In making its determination of facts, the Court must consider the FSB Motion and the Title Companies Cross-Motion independently and view the evidence and inferences in the light most favorable to the non-moving party. Amerisure Ins. Co. v. Navigators Ins. Co., 611 F.3d 299, 304 (5th Cir. 2010). With that standard in mind, the Court finds that there are no genuine issues with respect to the following facts set forth in the briefs submitted to the Court:

**Title Insurance Policies**

1.      FSB's breach of contract claims involve two separate title insurance policies purchased by FSB from the Title Companies.

2.      On May 22, 2008, the Title Companies issued FSB a title insurance policy, bearing policy number LP-107030, in the amount of $900,165.00, on two tracts of land in DeSoto County, Mississippi, purportedly owned by Brashear Heath, LLC ("Brashear"), a Mississippi company formed by Jon Christopher Evans ("Chris Evans"). (FSB Ex. 1).[3] Loan policy number LP-107030 is hereinafter referred to as the Brashear Policy.

      **a.      Brashear Policy**

3.      The two tracts of land subject to the Brashear Policy are referred to as Tracts 10O and 10E.

4.      The Brashear Policy insured FSB against any loss or damage sustained because of "Title [to Tracts 10E and 10O] being vested other than as stated in Schedule A" and/or because of a "defect in the Title caused by . . . fraud." (FSB Ex. 1). According to Schedule A, which was

---

[3] The exhibits submitted by FSB in support of its FSB Motion are cited as "(FSB Ex. ____)". The exhibits submitted by the Title Companies in support of the Title Companies Cross-Motion are cited as "(Title Companies Ex. ____)".

attached to the Brashear Policy, title to Tracts 10O and 10E was vested in Brashear.

5. Before the Title Companies sold FSB the Brashear Policy, Charles H. Evans ("Charles Evans"), as an "approved attorney" for the Title Companies, delivered to FSB a certificate of title indicating that title to Tracts 10O and 10E was vested in James C. Hensen and Cassandra E. Hensen. (FSB Ex. 3). At that time, title to Tracts 10O and 10E was actually vested in Woodgreen Development Corporation, a Mississippi company formed by Chris Evans.

6. Charles Evans and Chris Evans (together, the "Evans Brothers") are brothers.

7. After FSB received the certificate of title, Brashear executed on April 28, 2008, a deed of trust in favor of FSB as security for a loan in the amount of $900,165.00, ostensibly for the purchase of Tracts 10O and 10E. (FSB Exs. 5 & 7).

8. According to appraisals obtained by FSB, the fair market value of Tracts 10O and 10E was $1,437,400.00 when the Title Companies issued the Brashear Policy. (FSB Ex. 16).

9. The value of FSB's lien on Tracts 10O and 10E, as insured, was zero.

10. On January 20, 2009, the Title Companies issued FSB a title insurance policy, bearing policy number LP-107084, in the amount of $801,128.00, on a tract of land in DeSoto County, Mississippi, owned by Twin City Commons Development, LLC ("Twin City"), a Mississippi company formed by Chris Evans. (FSB Ex. 2). Loan policy number LP-107084 is hereinafter referred to as the Twin City Policy.

**b.    Twin City Policy**

11. The property subject to the Twin City Policy is referred to as Tract TC-2B.

12. The Twin City Policy insured FSB against any loss or damage sustained because of "Title [to Tract TC-2B] being vested other than as stated in Schedule A" and/or because of a "defect

in the Title caused by . . . fraud." (FSB Ex. 2). According to Schedule A, which was attached to the Twin City Policy, title to Tract TC-2B was vested in Twin City.

13.     Before the Title Companies sold FSB the Twin City Policy, Charles Evans, as an "approved attorney" for the Title Companies, delivered to FSB a certificate of title indicating that Twin City owned Tract TC-2B, free and clear of any liens. (FSB Ex. 4). Actually, there were two prior deeds of trust and other liens on Tract TC-2B in favor of other banks from whom the Evans Brothers had borrowed funds.

14.     After FSB received the certificate of title, Twin City executed on January 16, 2009, a deed of trust on Tract TC-2B to FSB as security for a loan in the amount of $801,128.00. (FSB Exs. 6 & 8).

15.     According to an appraisal obtained by FSB, the fair market value of Tract TC-2B was $1,012,800.00 when the Title Companies issued the Twin City Policy. (FSB Ex. 16).

16.     The value of FSB's lien on Tract TC-2B, as insured, was zero.

**FSB's Title Insurance Claims**

17.     In September, 2009, FSB concluded that because of fraud by the Evans Brothers, titles to Tracts 10O and 10E, and Tract TC-2B were not as insured by the Title Companies. Although the Title Companies admit that Charles Evans provided false information to FSB, they neither admit nor deny that his actions constituted fraud against FSB[4] (Title Companies Reply at 2).

18.     On September 25, 2009, FSB submitted a claim to the Title Companies on Tracts 10O and 10E. (FSB Ex. 11).

---

[4] On January 18, 2011, the Evans Brothers pled guilty to conspiracy to commit money laundering and bank fraud.

19. On November 10, 2009, FSB submitted a claim to the Title Companies on Tract TC-2B. (FSB Ex. 12).

20. Following the receipt of FSB's claims, the Title Companies unsuccessfully attempted to cure the title defects on Tracts 10O and 10E, and on Tract TC-2B. They had a right to do so, at their own cost, pursuant to ¶ 5(b) of the Brashear Policy and the Twin City Policy. (FSB Ex. 16). Paragraph 5(b) states:

> 5. DEFENSE AND PROSECUTION OF ACTIONS
>
> * * *
>
> (b) The Company shall have the right . . . , at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title or the lien of the Insured Mortgage, as insured, or to prevent or reduce loss or damage to the Insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.

(FSB Exs. 1 & 2).

21. The Title Companies concluded that the value of FSB's liens, as insured, was zero, and they elected to pay FSB's claims.

22. On May 6, 2010, the Title Companies paid FSB $460,000.00 under the Brashear Policy. (Title Companies Ex. C) and another $460,000.00 under the Twin City Policy (Title Companies Ex. E). FSB contends that these payments were insufficient to indemnify it for its losses as insured. (FSB Ex. 16).

23. FSB accepted the Title Companies' payments of their claims, subject to a full reservation of rights to assert claims against them arising out of the Brashear Policy and the Twin City Policy. (FSB Ex. 13).

24. The parties agree that the amounts paid by the Title Companies represented the fair market value of Tracts 10O and 10E, and Tract TC-2B, both as of the date the claims were made by FSB on September 25, 2009, and November 10, 2009, respectively, and the date the payments were made by the Title Companies on May 6, 2010. (Title Companies Ex. A).

**Adversary Proceeding**

25. On January 18, 2010, Derek A. Henderson, the duly appointed chapter 7 trustee for the bankruptcy estate of Chris Evans and for jointly-administered related cases (the "Trustee"), filed a First Amended Complaint (Adv. Dkt. 3) against FSB, as well as other banks, and the Title Companies. The Trustee asked the Court to determine the extent, validity, and priority of liens granted by entities controlled by Chris Evans on multiple tracts of real property. The FSB Motion and the Title Companies Motion involve parcels of land that comprise two of those tracts, Tracts 10 and TC.

26. On December 1, 2010, FSB filed the Amended Cross-Claim.[5] In the Amended Cross-Claim, FSB asserted four causes of action:

    Count I: Breach of Contract
    Count II: Breach of Obligation of Good Faith and Fair Dealing in Claims Handling
    Count III: Negligence, Including Negligent Supervision and Retention
    Count IV: Aiding and Abetting

27. On December 27, 2010, the Title Companies filed Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Answer and Affirmative Defenses to Amended Cross-Claim of First Security Bank (Adv. Dkt. 142).

28. FSB filed the FSB Motion on February 25, 2011. FSB seeks partial summary

---

[5] On November 30, 2010, the Court entered an Order Granting Motion to Amend (Adv. Dkt. 134).

judgment on its breach of contract claim against the Title Companies in the amount of $530,181.50 under the Brashear Policy and $421,240.80 under the Twin City Policy.

29. The Title Companies filed the Title Companies Cross-Motion on May 13, 2011. They seek partial summary judgment declaring that the amounts they paid FSB were an appropriate measure of FSB's losses under the Brashear Policy and the Twin City Policy. The Title Companies calculated FSB's losses based upon the fair market value of Tracts 10O and 10E, and Tract TC-2B as of the date FSB's claims were made and paid.

**Introduction**

The Cross-Motion is the first of three motions that the Title Companies have filed in the Adversary seeking summary judgment on claims asserted by FSB. In their second motion, Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Motion for Partial Summary Judgment (Adv. Dkt. 301), the Title Companies seek summary judgment on FSB's tort claims. In their third motion, Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Motion for Summary Judgment on Insurance Contract Claims of Patriot Bank, First Alliance Bank, First State Bank and OmniBank [sic] (the "Title Companies Third Motion")[6] (Adv. Dkt. 318), the Title Companies incorporate by reference the arguments that they raise here in support of their third request for summary judgment on FSB's claim for breach of contract.

The Title Companies Third Motion, however, differs from the present Cross-Motion in two

---

[6] The caption of the Title Companies Third Motion mistakenly refers to Patriot Bank, First Alliance Bank, First State Bank, and OmniBank rather than to First Security Bank and Holmes County Bank. The erroneous caption does not appear to have caused any confusion among the parties.

ways. First, in the Title Companies Third Motion, the Title Companies include a breach of contract claim alleged by Holmes County Bank. They apparently did so because the title insurance policies they sold FSB and Holmes County Bank are substantially similar. Second, in the Title Companies Third Motion, the Title Companies include in their request for summary judgment FSB's extra-contractual claims of (1) breach of the duty of good faith and fair dealing, and (2) bad faith. The Court disposes of the Title Companies' request for summary judgment on FSB's breach of contract claim here and reserves for decision in a separate opinion their same request on FSB's extra-contractual claims and tort claims.

### Issue

The Court must determine if the material facts establish the existence of a genuine dispute as to whether the Title Companies breached the Brashear Policy and/or the Twin City Policy by failing to compensate FSB for its full measure of losses and damage resulting from the title defects in Tracts 10O and 10E, and Tract TC-2B.

### Discussion

The gist of the legal dispute between FSB and the Title Companies, as articulated in the FSB Motion and the Title Companies Cross-Motion, is the appropriate date for the valuation of FSB's liens. *See* Architex Ass'n v. Scottsdale Ins. Co., 27 So. 3d 1148, 1156 (Miss. 2010) (under Mississippi law the interpretation of an insurance policy is a question of law).

**A.     Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(a),[7] made applicable to adversary proceedings by

---

[7] Pursuant to the Rules Enabling Act, 28 U.S.C. § 2072, Rule 56 of the Federal Rules of Civil Procedure was amended, as of December 1, 2010. The amendment did not change the standard for granting summary judgment. *See* Fed. R. Civ. P. 56 advisory committee's note to

Federal Rule of Bankruptcy Procedure 7056, summary judgment is appropriate when viewing the evidence in the light most favorable to the nonmoving party, the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, if any, show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). By its express terms, Rule 56(a) provides for partial summary judgment. Fed. R. Civ. P. 56(a). Once the moving party has made its required showing, Rule 56(c)(1) further provides, in relevant part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

"Summary judgment . . . serves, among other ways, to root out, narrow, and focus the issues, if not resolve them completely." Calpetco 1981 v. Marshall Exploration, Inc., 989 F.2d 1408, 1415 (5th Cir. 1993). The effect of a partial summary judgment, if granted, is to lessen the length and complexity of trial on the remaining issues, "all to the advantage of the litigants, the courts, those waiting in line for trial, and the American public in general." Id. Ultimately, the role of this Court is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249; *see* Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000). Even absent the presence of any genuine issue, the Court has the discretion to deny motions for summary judgment and allow parties to proceed to trial so that the

---

2010 Amendments ("The standard for granting summary judgment remains unchanged.").

record might be more fully developed for the trier of fact. See <u>Kunin v. Feofanov</u>, 69 F.3d 59, 62 (5th Cir. 1995); <u>Black v. J.I. Case Co.</u>, 22 F.3d 568, 572 (5th Cir. 1994); <u>Veillon v. Exploration Services, Inc.</u>, 876 F.2d 1197, 1200 (5th Cir. 1989). When, as here, both parties have filed motions for summary judgment, the Court must rule on each motion on an individual and separate basis. <u>Shaw Constructors v. ICF Kaiser Engineers, Inc.</u>, 395 F.3d 533, 538-39 n.8 (5th Cir. 2004).

**B.      Valuation Date**

The parties offer competing interpretations of identical provisions in the Brashear Policy and the Twin City Policy regarding the determination and extent of the Title Companies' liability. Paragraph 8 in both policies states:

> 8.      DETERMINATION AND EXTENT OF LIABILITY
>
> This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.
>
> (a)      The extent of liability of the Company for loss or damage under this policy shall not exceed the least of
> >   (i)      the Amount of Insurance,
> >   (ii)     the Indebtedness,
> >   (iii)    the difference between the value of the Title as Insured and the value of the Title subject to the risk insured against by this policy, . . . .
>
> (b)      If the Company pursues its rights under Section 5 of these Conditions [right to cure title] and is unsuccessful in establishing the Title or the lien of the Insured Mortgage, as insured,
> >   (i)      the Amount of Insurance shall be increased by 10%, and
> >   (ii)     the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.

Both parties agree that the measure of FSB's losses is governed by ¶8(a), known as the Maximum Payment Provision, or, more specifically, by ¶8(a)(iii), which defines liability as the difference between the value of FSB's liens as insured and the value of FSB's liens as they actually existed.

The parties also agree that the second number in the calculation is zero. They dispute the first number, which varies considerably depending upon *when* the value of FSB's liens is determined.

FSB relies exclusively upon subsection (a)(iii) of ¶8 for its contention that the appropriate date for determining the "value of the Title as insured," given that the value of its liens was zero, is the date of the policy, which is the same as the date of the loan. If these dates are applied, FSB's losses are the same as the amounts it loaned to Brashear and Twin City, and the Title Companies breached the Brashear Policy and the Twin City Policy by paying considerably less than these amounts. Paragraph 8(a)(iii) does not designate the date of the policy, or any other date, for determining the "value of the Title as insured." Nevertheless, because its liens were unenforceable from the start, FSB maintains that applying the loan dates as the dates of valuation is consistent with the indemnity aspect of the policies. In that regard, FSB asks this Court to apply the reasoning in Citicorp Savings of Illinois v. Stewart Title Guaranty Company, 840 F.2d 526 (7th Cir.1988) (measuring lender's damages for defective title on date loan was made where grantor of deed of trust was incompetent).

The Title Companies, in contrast, rely upon subsection (b)(ii) of ¶8, known as the Unsuccessful Cure Provision, for its contention that there are only two options for determining FSB's actual loss under ¶8(a)(iii) of the Maximum Payment Provision, namely, the date FSB made its claim or the date they paid FSB's claim. If these dates are applied, the Title Companies fulfilled their contractual obligations by paying FSB the appraised value of Tracts 10O and 10E and Tract TC-2B at the time the claims were made and paid.[8]

---

[8] There is no dispute that the values remain the same regardless of which valuation date in the Unsuccessful Cure Provision is applied.

FSB maintains that the Unsuccessful Cure Provision applies only at the insured's discretion, and that it chose not to exercise its right to have its losses determined under either of the optional dates, both of which are much later than the dates of the loans when the fair market value of Tracts 10O and 10E, and Tract TC-2B actually exceeded the original loan amounts.  According to FSB, the Title Companies' contention that the Unsuccessful Cure Provision *mandates* a later date for the valuation of its liens violates rules of construction for contracts and insurance policies and, at best, provides a second interpretation of ¶8(a) that render it ambiguous.  FSB insists that any such ambiguity must be resolved in its favor as the insured.  *See* Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 399 (5th Cir. 2008) (Once a contractual ambiguity is identified, the court "must strictly construe the contract language in favor of the insured.").

FSB does not dispute that the Title Companies unsuccessfully attempted to cure the title defects and, in that regard, even contends that the face amounts of the Brashear Policy and the Twin City Policy automatically increased by 10% under ¶8(b)(i) as a result of their unsuccessful attempt to do so.  Instead, FSB contends that ¶8(b)(ii) provides additional rights to the insured (to account for a potentially rising real estate market) but does not obligate the insured to choose one of the later valuation dates.  FSB points out that unlike  ¶8(b)(ii), the language in ¶8(b)(i) is mandatory: "the Amount of Insurance *shall* be increased by 10%."  (FSB Exs. 1 & 2) (emphasis added).

FSB's claims closely mirror those recently asserted by Heritage Banking Group against the Title Companies in a separate adversary proceeding where the Court ruled that language identical to the Maximum Payment Provision at issue here was ambiguous because it failed to specify when the date of loss should be determined.  G&B Investments, Inc. v. Henderson (In re Evans) (Evans I), Adv. No. 10-00040-NPO, 2011 WL 4712176, at *31-32 (Bankr. S.D. Miss. Oct. 7, 2011).  The

Court noted in Evans I that by providing a date certain for valuing the insured title, language identical to the Unsuccessful Cure Provision resolved that ambiguity. Even so, the Court concluded that the Title Companies never invoked the Unsuccessful Cure Provision and found in favor of Heritage Banking Group. Id. The facts of this Adversary, however, are distinguishable because unlike Heritage Banking Group, FSB does not dispute that the Title Companies attempted to cure the title defects. Thus, in this matter, the Unsuccessful Cure Provision applies.

Moreover, the Court finds that the Unsuccessful Cure Provision is clear and unambiguous and, thus, agrees with the Title Companies' method of calculating FSB's losses under the Brashear Policy and Twin City Policy. FSB attempts to parlay its right to chose one of two dates in ¶8(b)(ii) into a right to chose whether ¶8(b)(ii) applies at all. The Court finds FSB's interpretation unreasonable. FSB has not cited any case authority that directly supports its strained reading of the Unsuccessful Cure Provision. Mississippi law is well-established that ambiguities do not exist simply because two parties disagree over the interpretation of a policy. HeartSouth, PLLC v. Boyd, 865 So. 2d 1095, 1105 (Miss. 2003). Rather, there must be two or more reasonable interpretations of a provision before it may be found to be ambiguous. Miss. Farm Bureau Cas. Ins. Co. v. Britt, 826 So. 2d 1261, 1265 (Miss. 2002). Further, the Mississippi Supreme Court has made clear that if a contract is unambiguous, the provisions must be applied as written. U.S. Fid. & Guar. Co. v. Martin, 998 So. 2d 956, 963 (Miss. 2008); Noxubee Cnty. Sch. Dist. v. United Nat'l Ins. Co., 883 So. 2d 1159, 1165 (Miss. 2004). "[A] court must refrain from altering or changing a policy where terms are unambiguous, despite resulting hardship on the insured." Titan Indem. Co. v. Estes, 825 So. 2d 651, 656 (Miss. 2002). The Court concludes that the actual loss suffered by FSB under the terms of the Brashear Policy and the Twin City Policy is the value of the liens at the time the claims

were made or paid. Because it is undisputed that the Title Companies paid these amounts to FSB, the Court awards the Title Companies partial summary judgment on FSB's breach of contract claims.

## Conclusion

In conclusion, the Court finds that FSB is not entitled to partial summary judgment on its breach of contract claims against the Title Companies and further finds that the Title Companies are entitled to partial summary judgment against FSB on its breach of contract claims.

SO ORDERED.

/s/ Neil P. Olack
Neil P. Olack
United States Bankruptcy Judge
Dated: December 15, 2011