# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

    JON CHRISTOPHER EVANS,                           CASE NO. 09-03763-NPO

    DEBTOR.                                                      CHAPTER 7

JOINTLY ADMINISTERED WITH RELATED CASES


DEREK A. HENDERSON, TRUSTEE                        PLAINTIFF
FOR THE BANKRUPTCY ESTATE OF
JON CHRISTOPHER EVANS AND
JOINTLY ADMINISTERED RELATED
CASES

V.                                                                            ADV. PROC. NO.  10-00005-NPO

COMMUNITY BANK OF MISSISSIPPI,                   DEFENDANTS
BANCORPSOUTH BANK, FIRST BANK,
STATE BANK & TRUST COMPANY,
BANK OF YAZOO CITY, BANK OF THE
SOUTH, CITIZENS NATIONAL BANK
OF MERIDIAN, HOLMES COUNTY
BANK & TRUST COMPANY, BANK
FIRST FINANCIAL SERVICES,
RENASANT BANK, METROPOLITAN
BANK, FIRST COMMERCIAL BANK,
NATIONAL BANK OF COMMERCE,
GUARANTY BANK & TRUST
COMPANY, CADENCE BANK,
BRITTON & KOONTZ NATIONAL
BANK, WACHOVIA BANK, SOUTH
TRUST BANK, OMNI BANK,
MERCHANTS & PLANTERS BANK,
FIRST BANK OF MCCOMB, HERITAGE
BANKING GROUP, THE CARTHAGE
BANK, BANKPLUS, UNION PLANTERS
BANK, PEOPLES BANK & TRUST
COMPANY, FIRST TRUST BANK FOR
SAVINGS, FIRST ALLIANCE BANK,
FIRST STATE BANK, FIRST SECURITY
BANK, PATRIOT BANK, TRUST ONE

**BANK, FIRST TENNESSEE BANK,
BANK OF BARTLETT, BANK OF
AMERICA, MERCHANTS & FARMERS
BANK, BANK OF FOREST, COPIAH
BANK, CONSUMER NATIONAL BANK,
REGIONS BANK, MISSISSIPPI VALLEY
TITLE INSURANCE COMPANY AND
OLD REPUBLIC NATIONAL TITLE
INSURANCE COMPANY**

### MEMORANDUM OPINION AND ORDER ON MISSISSIPPI VALLEY TITLE INSURANCE COMPANY AND OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT

There came on for consideration (1) Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Motion for Partial Summary Judgment (the "Motion") (Adv. Dkt. 303)[1] and Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Brief in Support of Motion for Partial Summary Judgment (the "Title Companies Brief") (Adv. Dkt. 304) filed by Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company ("Title Companies"); (2) Response of First Alliance Bank, Patriot Bank, First State Bank, Holmes County Bank, and State Bank & Trust Company to Title Companies' Motion for Partial Summary Judgment (the "State Bank Response") (Adv. Dkts. 308 & 309) and Brief of First Alliance Bank, Patriot Bank, First State Bank, Holmes County Bank, and State Bank & Trust Company in Response to Title Companies' Motion for Partial Summary Judgment (the "State Bank Response Brief") (Adv. Dkt. 310) filed by First Alliance Bank ("First Alliance"), Patriot Bank ("Patriot"), First State Bank ("First State"), Holmes County Bank

---

[1] Citations to the record are as follows: (1) citations to docket entries in this adversary proceeding are cited as "(Adv. Dkt. ____)" and (2) citations to the docket entries in the main bankruptcy case are cited as "(Case No. 09-03763-NPO, Dkt. ____)."

("Holmes"), and State Bank & Trust Company ("State Bank"); (3) Response of Merchants & Farmers Bank to Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Motion for Partial Summary Judgment [Dkt. 303] (the "M&F Response") (Adv. Dkt. 340) and Brief of Merchants & Farmers Bank in Response to Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Motion for Partial Summary Judgment [Dkt. 303] (the "M&F Response Brief") (Adv. Dkt. 341) filed by Merchants & Farmers Bank ("M&F"); and (4) Title Companies' Reply Brief in Support of Motion for Partial Summary Judgment (Adv. Dkt. 363) filed by the Title Companies in the above-referenced adversary proceeding (the "Adversary").

Having reviewed the pleadings and all the exhibits attached thereto, together with other pleadings on file and the briefs submitted by the parties, the Court finds that partial summary judgment should be granted in favor of the Title Companies on the tort claims of State Bank and M&F (sometimes referred to together as the "Banks"), as set forth below.[2]

### Jurisdiction

This Court has jurisdiction over the subject matter of and the parties to this proceeding pursuant to 28 U.S.C. § 1334. This matter is a core proceeding as defined in 28 U.S.C. §157(b)(2)(K).[3] Notice of the Motion was proper under the circumstances.

---

[2] The following constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

[3] State Bank and M&F both allege in cross-claims they filed against the Title Companies that this matter is a core proceeding. *See* Amended Crossclaim of State Bank & Trust Company (Adv. Dkt. 186); Amended Crossclaim Against Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company (Adv. Dkt. 197). In their responses, however, the Title Companies allege that "[t]his matter is non-core under 28 U.S.C. § 157(b)(2)." *See* Mississippi Valley Title Insurance Company and Old Republic National Title Insurance

**Facts**

In making its determination of facts on the Motion, this Court must view the evidence submitted by the parties in the light most favorable to the non-moving party. McPherson v. Rankin, 736 F.2d 175, 178 (5th Cir. 1984). With that standard in mind, the Court finds that there are no genuine issues with respect to the following facts set forth by the parties in the briefs submitted to the Court:

**463 Development Policy and State Bank**

1. In 2007, Jon Christopher Evans ("Chris Evans") approached State Bank about obtaining a loan secured by two parcels of land, Tracts 3B and 3F, in Madison County, Mississippi.

2. Charles H. Evans and Chris Evans are brothers (the "Evans Brothers").

3. Charles Evans served as the "approved attorney" for the Title Companies in this transaction.

4. On August 30, 2007, State Bank loaned $1,302,914.50 to 463 Development Company, LLC ("463 Development"), an entity controlled by Chris Evans. The loan was secured

---

Company's Answer and Affirmative Defenses to Amended Cross-Claim of State Bank & Trust Company (Adv. Dkt. 208); Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Answer and Affirmative Defenses to Amended Crossclaim of Merchants & Farmers Bank (Adv. Dkt. 209). The Court need not address the core/non-core distinction because the parties clearly have consented to the final adjudication by this Court of all of their claims. See 28 U.S.C. § 157(c)(2); see also Oxford Expositions, LLC v. Questex Media Group (In re Oxford Expositions, LLC), No. 11-01095-DWH, 2011 WL 4074028 (Bankr. N.D. Miss. Sept. 13, 2011) (holding that power to consent under 28 U.S.C. § 157(c)(2) remains undisturbed after Stern v. Marshall, 131 S. Ct. 2594 (2011)). Notably, the Title Companies have not mentioned in any of their numerous pre-trial filings that they have withdrawn their consent to this Court's authority. See Fed. R. Bankr. P. 7012(b).

by a first mortgage lien position on Tracts 3B and 3F. (State Bank Crossclaim Ex. 3).[4]

5. On November 7, 2007, the Title Companies issued State Bank a title insurance policy, bearing policy number M-306873, on Tracts 3B and 3F. (State Bank Crossclaim Ex. 4). Loan policy number M-306873 is hereinafter referred to as the 463 Development Policy.

6. The 463 Development Policy stated that 463 Development was the owner of Tracts 3B and 3F. Additionally, the 463 Development Policy stated that Tracts 3B and 3F were free of any liens or encumbrances. On the date the 463 Development Policy was issued, however, there were numerous deeds of trust and other liens on the properties in favor of other banks from whom the Evans Brothers had borrowed funds.

7. The 463 Development Policy insured State Bank against loss or damage sustained by certain conditions, including any defect in, or lien or encumbrance on the title. (State Bank Crossclaim Ex. 4).

**Madison Avenue Policy and M&F**

8. In 2007, Chris Evans approached M&F about obtaining a loan secured by two parcels of land, Tracts 3A and 3F, in Madison County, Mississippi.

9. Charles Evans served as the "approved attorney" for the Title Companies in this transaction.

10. In April, 2007, M&F loaned $1,360,590.00 to Madison Avenue Development Co., LLC ("Madison Avenue"), an entity controlled by Chris Evans. The loan was secured by a first lien

---

[4] Some of the exhibits, which are incorporated by reference, are attached to the crossclaims filed by the Banks. Those exhibits are cited as "('Name of Bank' Crossclaim Ex. ____)". The exhibits the Title Companies attached to the Motion are cited as "(Title Companies Ex. ____)".

position on Tracts 3A and 3F.

11. On July 10, 2007, the Title Companies issued M&F a title insurance policy, bearing policy number M-306816, on Tracts 3A and 3F. (M&F Crossclaim Ex. 1). Loan policy number M-306816 is hereinafter referred to as the Madison Avenue Policy.

12. The Madison Avenue Policy stated that Madison Avenue owned Tracts 3A and 3F. Additionally, the Madison Avenue Policy stated that Tracts 3A and 3F were free of any liens or encumbrances. On the date the Madison Avenue Policy was issued, however, the property was actually owned by another entity controlled by Chris Evans and there were numerous deeds of trust and other liens on the properties in favor of other banks from whom the Evans Brothers had borrowed funds.

13. The Madison Avenue Policy insured M&F against loss or damage sustained or incurred by reason of the title being vested other than as stated in the policy.

**Adversary Proceeding**

14. On January 18, 2010, Derek A. Henderson, the duly appointed chapter 7 trustee for the bankruptcy estate of Chris Evans and for jointly-administered related cases (the "Trustee"), filed a First Amended Complaint (Adv. Dkt. 3) against the Banks, as well as other banks, and the Title Companies. The Trustee asked this Court to determine the extent, validity, and priority of the liens granted by entities controlled by Chris Evans on multiple tracts of real property. At issue here are parcels of land that comprise Tract 3.

15. On April 29, 2011, State Bank filed an Amended Crossclaim of State Bank & Trust Company (the "State Bank Amended Crossclaim") (Adv. Dkt. 186). In the State Bank Amended Crossclaim, State Bank asserts causes of action against the Title Companies for: (1) failure to audit,

monitor, and supervise Charles Evans, (2) breach of contract-title policies, (3) bad faith and tortious breach of contract, and (4) attorney's fees. In response, the Title Companies filed Mississippi Valley Title Insurance Company and Old Republic National Insurance Company's Answer and Affirmative Defenses to Amended Cross-Claim of State Bank & Trust Company (Adv. Dkt. 208) on May 13, 2011.

16. On May 4, 2011, M&F filed an Amended Crossclaim Against Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company (the "M&F Amended Crossclaim") (Adv. Dkt. 197). In the M&F Amended Crossclaim, M&F asserts causes of action against the Title Companies for: (1) breach of contract, (2) breach of obligation of good faith and fair dealing in claims handling, (3) negligence, including negligent supervision and retention of Charles Evans, and (4) aiding and abetting. In response, the Title Companies filed Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Answer and Affirmative Defenses to Amended Crossclaim of Merchants & Farmers Bank (Adv. Dkt. 209) on May 13, 2011.

17. On August 10, 2011, the Title Companies filed the Motion against the Banks seeking partial judgment as a matter of law on (1) State Bank's and M&F's claims of negligent failure to audit, monitor, or supervise Charles Evans; (2) M&F's negligent retention claim; and (3) M&F's claim for aiding and abetting.

**Introduction**

The Court pauses here to discuss the procedural posture of the present Motion. In this Adversary, the Title Companies have filed a cross-motion and five motions. This Motion is the first of two motions that the Title Companies have filed in which they seek partial summary judgment on claims asserted by State Bank and M&F. In this opinion, the Court disposes of the Title

Companies' request for partial summary judgment only as to the tort claims asserted by State Bank and M&F.  In yet another motion, Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Motion for Partial Summary Judgment (the "First Tort Motion") (Adv. Dkt. 301), the Title Companies seek the same relief on similar claims asserted by other banks.  Indeed, the State Bank Response is the same response filed by First Alliance, Patriot, First State, and Holmes in opposition to the First Tort Motion.  This opinion, therefore, closely resembles the ruling of the Court on the First Tort Motion (Adv. Dkt. 389).

## Discussion

**A.     Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(a),[5] made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, summary judgment is appropriate when viewing the evidence in the light most favorable to the nonmoving party, the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, if any, show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  By its express terms, Rule 56(a) provides for partial summary judgment.  Fed. R. Civ. P. 56(a). Once the moving party has made its required showing, Rule 56(c)(1) further provides, in relevant part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B)

---

[5] Pursuant to the Rules Enabling Act, 28 U.S.C. § 2072, Rule 56 of the Federal Rules of Civil Procedure was amended, as of December 1, 2010.  The amendment did not change the standard for granting summary judgment.  *See* Fed. R. Civ. P. 56 advisory committee's note to 2010 Amendments ("The standard for granting summary judgment remains unchanged.").

> showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

"Summary judgment . . . serves, among other ways, to root out, narrow . . . and focus the issues, if not resolve them completely." Calpetco 1981 v. Marshall Exploration, Inc., 989 F.2d 1408, 1415 (5th Cir. 1993). The effect of a partial summary judgment, if granted, is to lessen "the length and complexity of trial on the remaining issues . . . all to the advantage of the litigants, the courts, those waiting in line for trial, and the American public in general." Id. Ultimately, the role of this Court is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249; *see* Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000). Even absent a genuine issue, the Court has the discretion to deny summary judgment to allow parties to proceed to trial so that the record might be more fully developed. *See* Kunin v. Feofanov, 69 F.3d 59, 62 (5th Cir. 1995); Black v. J.I. Case Co., 22 F.3d 568, 572 (5th Cir. 1994); Veillon v. Exploration Services, Inc., 876 F.2d 1197, 1200 (5th Cir. 1989).

**B.     State Bank's and M&F's Claims of Negligent Failure to Audit, Monitor, or Supervise Charles Evans**

State Bank and M&F allege that the Title Companies had a duty to audit, monitor, and supervise their approved attorney, Charles Evans. The Title Companies contend that the Banks cannot prove the existence of a duty under Mississippi law. *See, e.g.*, Enterprise Leasing Co. v. Bardin, 8 So. 3d 866, 868 (Miss. 2007) (plaintiff's first obligation in a negligence case is proving that a duty exists). To successfully assert a claim of negligence, the Banks must prove: (1) a duty, (2) a breach of duty, (3) a reasonably close causal connection between the conduct complained of

and the resulting injury, and (4) actual loss or damage resulting to the interests of another. Little v. Miller, 909 So. 2d 1256, 1259 (Miss. Ct. App. 2005), citing Foster by Foster v. Bass, 575 So. 2d 967, 972 (Miss. 1990).

The Banks maintain that the Supervision and Control Guidelines for Agencies and Approved Attorneys (the "ALTA Guidelines"), developed by the American Land Title Association ("ALTA"), of which the Title Companies are members, create a legal duty requiring title companies to audit, monitor, and supervise their approved attorneys.[6] The ALTA Guidelines suggest that title companies have in place an evaluation system by which they can monitor escrow accounting procedures, compliance with local and federal laws and statutes, and conflicts of interest. (State Bank Ex. 22). Additionally, the ALTA Guidelines state that "management must ensure that . . . approved attorneys properly account for and control all escrow and settlement funds." (State Bank Ex. 22).

The Banks contend that the Title Companies breached the duty because they "[n]ever conduct[ed] any investigation or inquiry," but "accepted Charles Evans' certifications as to status of title and verbatim copied them onto their Title Commitments and Title Polices." (State Bank Response Brief at 35). The Title Companies did not audit, monitor, or supervise Charles Evans, the Banks argue, even though they had an auditing department. (State Bank Ex. 21). Indeed, if the Title Companies had audited, monitored, or supervised Charles Evans, they would have learned he was writing checks to a men's clothing shop in Jackson, Mississippi, and paying charges on his American Express card from funds drawn on the attorney trust account that Charles Evans used for escrow and

---

[6] The Court entered an Order (Adv. Dkt. 387) on November 17, 2011, allowing the use of the ALTA Guidelines in opposition to the Motion. In that same Order, the Court excluded a majority of the opinions in the expert report of George M. Pierson on the ground that they constituted legal conclusions that impermissibly invaded the province of this Court.

disbursement of the loan proceeds in which the Title Companies' issued their policies. (State Bank Ex. 25). Indeed, the Title Companies admit that if they known about Charles Evans' behavior, they would have removed him from their approved attorney's list earlier. (State Bank Ex. 23).

The Title Companies do not dispute that they failed to audit, monitor or supervise Charles Evans. Additionally, the Title Companies admit that they have an in-house auditing department that audits their *agents* by "pull[ing] . . closing files and look[ing] at the deed, deeds of trust, [to] see if the different notices have been signed" and monitoring escrow accounts. (State Bank Ex. 21). The auditing department, however, does not oversee the actions of the Title Companies' approved attorneys. The Title Companies state that they check *approved attorneys* only to ensure they have errors and omissions insurance in place and to find out if any clients have filed complaints against them with the applicable bar association. (State Bank Ex. 21).

The Title Companies argue that an insurer has no duty to audit, monitor or supervise its approved attorneys as a matter of law. The Title Companies believe this issue is squarely settled by the Mississippi Supreme Court's decision in Hartford Steam Boiler Inspection & Ins. Co. v. Cooper, 341 So. 2d 665, 666 (Miss. 1977). There, the Mississippi Supreme Court held that an insurer of certain industrial equipment had no duty to an employee of its insured to inspect the equipment for safety hazards. Id. at 666. The employee sued the insurance company to recover damages from personal injuries he sustained as the result of the insurer's alleged negligent inspection of the equipment. The Mississippi Supreme Court explained that if the insurer "had a duty to inspect, the obligation must derive either from the policy or because [the insurer] assumed responsibility for performing inspections to the extent that they should have recognized the inspection of the machines was necessary for the protection of third persons." Id. at 667. "The incidental benefits that accrued

to [the insured's] employees and the public by . . . inspections and recommendation should not rationally give rise to liability for failure to inspect a particular piece of equipment." Id., citing Zamecki v. Hartford Accident & Ind. Co., 95 A.2d 302 (1953).

According to the Title Companies, because the Hartford Steam court held that any underwriting efforts done by an insurer are solely for its own benefit and not for the benefit of the insured, Mississippi law does not impose a duty on title companies to audit, monitor, or supervise their approved attorneys. This holding, the Title Companies argue, is consistent with the results reached in other jurisdictions that have settled similar issues. For example, the United States Court of Appeals for the Eight Circuit in Bluehaven Funding, LLC v. First Am. Title Ins. Co., 594 F.3d 1055 (8th Cir. 2010), held that a title insurer does not owe a common-law duty to third parties to monitor, supervise, or review its title agents. Embracing language similar to the analysis in Hartford Steam, the Eighth Circuit found that the title insurer's contractual right to review the title agent's escrow files and accounts was solely for its own benefit and protection, and not for the benefit of any third party. Id. at 1061 (applying Missouri law). Although some courts have found that a title insurer may be negligent if it fails to discover and disclose a title defect, such liability appears to arise only in instances where a title company had expressly agreed to provide a title report or issued a preliminary title report that failed to disclose the defect. Focus Inv. Assocs. v. Am. Title Ins. Co., 992 F.2d 1231, 1236 (1st Cir. 1993) (holding that "[i]n the absence of a duty to search title, as a matter of law, there can be no liability for failing to do so").

Simply put, the issue before this Court is a question of law that no reported case in Mississippi has yet addressed, that is, whether a title insurance company owes a duty to a third party to audit, supervise, or retain an approved attorney. Generally, Mississippi law imposes a duty on a

person who does some act to take reasonable and due care in performing that act, even in the absence of a contract. River Prod. Co. v. Banker Hughes Prod. Tools, Inc., 98 F.3d 857, 859 (5th Cir. 1996), citing Dr. Pepper Bottling Co. v. Bruner, 148 So. 2d 199, 201 (Miss. 1962). "Determining whether a duty is owed is approached by asking 'whether the plaintiff's interests are entitled to legal protection against the defendant's conduct,' rather than focusing solely on the level of relationship between the parties." Scafide v. Bazzone, 962 So. 2d 585, 592 (5th Cir. 2006), quoting PROSSER AND KEETON ON TORTS § 53, at 356-58 (5th ed. 1984). In general, Mississippi law does not recognize a fiduciary relationship or duty between an insurance company and its insured because courts deem the purchase of insurance to be an arms-length business transaction. Frye v. Am. Gen. Fin., Inc., 307 F. Supp. 2d 836, 843 (S.D. Miss. 2004).

Whether a duty is owed in a negligence action is a question of law. Here, the Court agrees with the construction and application of the Hartford Steam decision posited by the Title Companies. The Hartford Steam court held that an insurer has a duty to inspect its insured only when it is provided for in the policy. In this same vein, a insurer should have a duty to audit, monitor, or supervise an approved attorney only when it is provided for in the policy. Were this Court to impose a duty upon the Title Companies to audit, monitor, or supervise its approved attorneys, it would in essence create a fiduciary relationship between an insurance company and its insured in contravention of well-settled Mississippi law. See Frye, 307 F. Supp. 2d at 843. This finding is also consistent with the Eighth Circuit's decision in Bluehaven finding that an insurer had no duty to supervise its own agent. See Bluehaven, 594 F.3d 1055. The Court rejects the contention of the Banks that the ALTA Guidelines create a duty for the Title Companies to audit, monitor, or supervise their approved attorneys. The ALTA Guidelines are just that, guidelines, by which title

companies should conduct their business. The failure to adhere to suggested guidelines does not impose liability. The Motion as to claims of the Banks arising out of the alleged negligence of the Title Companies to audit, monitor, or supervise Charles Evans should be granted on the ground that the Title Companies owed no such duty to the Banks under Mississippi law.

**C.     M&F's Negligent Retention Claim**

In addition to its negligent supervision claim, M&F asserts a claim against the Title Companies for the negligent retention of their approved attorney, Charles Evans. A claim of negligent retention "is simply a negligence claim, requiring a finding of duty, breach of duty, causation and damage." Roman Catholic Diocese v. Morrison, 905 So. 2d 1213, 1229 (Miss. 2005). Mississippi law requires the presence of an employer-employee relationship to assert a claim of negligent retention. *See* Commercial Bank v. Hearn, 923 So. 2d 202, 204 (Miss. 2006). Moreover, an employer who exercised due care in hiring its employee may be held liable for the negligent retention of that employee only when the employer had either actual or constructive knowledge of the employee's incompetence or unfitness. Brown ex rel. Doe v. Ponotoc Cnty. School Dist., 957 So. 2d 410, 417 (Miss. Ct. App. 2007), citing Eagle Motor Lines, Inc. v. Mitchell, 78 So. 2d 482, 487 (Miss. 1955).

The Title Companies argue that partial summary judgment is proper because M&F does not dispute that Charles Evans was never employed by them. Further, the Title Companies maintain that even if they were his employer, M&F cannot meet its burden of showing that the Title Companies had actual or constructive knowledge of Charles Evans's unfitness. Their argument is premised on a finding that they acted properly when they added Charles Evans to the approved attorney list in 1984 and again in 2002.

M&F counters that by keeping Charles Evans on the approved attorneys list after they knew or should have known about his fraudulent conduct, the Title Companies are liable for his negligent retention. They contend that the existence of numerous title insurance policies on the same property should have alerted them that something was amiss.

The Court finds that because Charles Evans was never an employee of the Title Companies, the Title Companies cannot be held liable for negligent retention as a matter of law. Thus, the Motion as to M&F's claim of negligent retention should be granted on the merits on the ground that there is no evidence of an employer-employee relationship. Given this finding, it is unnecessary for the Court to determine if there are genuine issues of fact as to whether the Title Companies had notice of Charles Evans' fraudulent scheme.

**D.     M&F's Claim of Civil Aiding and Abetting under the RESTATEMENT (SECOND) OF TORTS § 876(c)**

M&F alleges that the Title Companies substantially assisted Charles Evans in his fraudulent scheme. As a result of these actions, M&F contends that the Title Companies are liable for aiding and abetting Charles Evans pursuant to the RESTATEMENT (SECOND) OF TORTS § 876(c). M&F bases its claim of aiding and abetting against the Title Companies primarily upon representations in the title insurance policy they issued, which reflected that M&F had a first lien position, when in fact it did not.

The RESTATEMENT (SECOND) OF TORTS § 876 addresses the related claims of (1) civil conspiracy and (2) civil aiding and abetting under the common law. *See* Lussier v. Bessette, 16 A.3d 580, 583-87 (Vt. 2010). Civil conspiracy is defined in § 876(a), whereas the elements of civil aiding and abetting are laid out in § 876(b) and § 876(c). Stanton v. Bank of Am., N.A., No. 09-00404DAE-LEK, 2010 WL 4176375, *14 (D. Haw. Oct. 19, 2010).

The two subsections on aiding and abetting, § 876(b) and § 876(c), differ in important ways. Under § 876(b), liability exists when a party "knows that [another tortfeasor's] conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other." RESTATEMENT (SECOND) OF TORTS § 876(b). Under § 876(c), liability exists "for harm resulting to a third person from the tortious conduct of another, . . if he . . . gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person." RESTATEMENT (SECOND) OF TORTS § 876(c). Thus, to meet the elements of aiding and abetting under § 876(c), which is the cause of action M&F alleges, the plaintiff must demonstrate that (1) the defendant's actions constituted a breach of duty and (2) the defendant provided substantial assistance to the primary party's breach. Norman v. Brandt, 929 N.E. 2d 14, 21 (Ill. App. Ct. 2010). Notably, § 876(c) does not require knowledge about the primary party's wrongdoing.

No Mississippi court has ever recognized any of the subsections of the RESTATEMENT (SECOND) OF TORTS § 876 as viable causes of action. Mississippi recognizes a common-law claim for civil conspiracy, but not under the auspices of § 876(a). *See* Perkins v. Wal-Mart Stores, Inc., 46 So. 3d 839 (Miss. Ct. App. 2010). Additionally, no Mississippi court has recognized a claim for civil aiding and abetting, whether under § 876(b) or § 876(c). Significantly, however, the federal district court in Dale v. ALA Acquisitions, Inc., 203 F. Supp. 2d 694 (S.D. Miss. 2002), made an *Erie*[7] guess that Mississippi would recognize a claim under § 876(b) for two reasons: (1) because a majority of other jurisdictions have done so and (2) because Mississippi recognizes the analogous tort of civil conspiracy. The first reason, however, does not support recognition of such a claim

---

[7] Erie RR Co. v. Tompkins, 304 U.S. 64, 78 (1938).

under § 876(c) because the version of civil aiding and abetting set forth in § 876(c) differs from § 876(b) to such an extent that only a minority of jurisdictions recognize a claim under § 876(c). Thus, this Court declines to hold that Mississippi would recognize § 876(c) as a viable cause of action. Accordingly, the Court finds that the Motion as to M&F's claim of civil aiding and abetting should be granted.

## Conclusion

In conclusion, the Court finds that the Title Companies are entitled to partial summary judgment as a matter of law on the following tort claims asserted by State Bank and M&F:

(1) claims of State Bank and M&F for negligent failure to audit, monitor, or supervise Charles Evans on the ground that the Title Companies owed no duty to audit, monitor, or supervise Charles Evans;

(2) claims of M&F for negligent retention of Charles Evans on the ground that there was no employer/employee relationship between the Title Companies and Charles Evans; and

(3) claims of M&F for civil aiding and abetting under the RESTATEMENT (SECOND) OF TORTS § 876(c) on the ground that Mississippi does not recognize such a cause of action.

All other relief requested by the Title Companies in the Motion that is not specifically granted herein is denied.

SO ORDERED.

_/s/ Neil P. Olack_
Neil P. Olack
United States Bankruptcy Judge
Dated: December 15, 2011