## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

**JON CHRISTOPHER EVANS,**                    CASE NO. 09-03763-NPO

**DEBTOR.**                                    CHAPTER 7

**JOINTLY ADMINISTERED WITH RELATED CASES**


**DEREK A. HENDERSON, TRUSTEE**                    PLAINTIFF
**FOR THE BANKRUPTCY ESTATE OF**
**JON CHRISTOPHER EVANS AND**
**JOINTLY ADMINISTERED RELATED**
**CASES**

**V.**                                    ADV. PROC. NO.  10-00005-NPO

**COMMUNITY BANK OF MISSISSIPPI,**                    DEFENDANTS
**BANCORPSOUTH BANK, FIRST BANK,**
**STATE BANK & TRUST COMPANY,**
**BANK OF YAZOO CITY, BANK OF THE**
**SOUTH, CITIZENS NATIONAL BANK**
**OF MERIDIAN, HOLMES COUNTY**
**BANK & TRUST COMPANY, BANK**
**FIRST FINANCIAL SERVICES,**
**RENASANT BANK, METROPOLITAN**
**BANK, FIRST COMMERCIAL BANK,**
**NATIONAL BANK OF COMMERCE,**
**GUARANTY BANK & TRUST**
**COMPANY, CADENCE BANK,**
**BRITTON & KOONTZ NATIONAL**
**BANK, WACHOVIA BANK, SOUTH**
**TRUST BANK, OMNI BANK,**
**MERCHANTS & PLANTERS BANK,**
**FIRST BANK OF MCCOMB, HERITAGE**
**BANKING GROUP, THE CARTHAGE**
**BANK, BANKPLUS, UNION PLANTERS**
**BANK, PEOPLES BANK & TRUST**
**COMPANY, FIRST TRUST BANK FOR**
**SAVINGS, FIRST ALLIANCE BANK,**
**FIRST STATE BANK, FIRST SECURITY**
**BANK, PATRIOT BANK, TRUST ONE**

BANK, FIRST TENNESSEE BANK,
BANK OF BARTLETT, BANK OF
AMERICA, MERCHANTS & FARMERS
BANK, BANK OF FOREST, COPIAH
BANK, CONSUMER NATIONAL BANK,
REGIONS BANK, MISSISSIPPI VALLEY
TITLE INSURANCE COMPANY AND
OLD REPUBLIC NATIONAL TITLE
INSURANCE COMPANY

**MEMORANDUM OPINION AND ORDER ON MISSISSIPPI VALLEY TITLE
INSURANCE COMPANY AND OLD REPUBLIC NATIONAL TITLE
INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT
ON INSURANCE CONTRACT CLAIMS OF PATRIOT BANK,
FIRST ALLIANCE BANK, FIRST STATE BANK AND OMNIBANK**

There came on for consideration (1) Mississippi Valley Title Insurance Company and Old

Republic National Title Insurance Company's Motion for Summary Judgment on Insurance Contract

Claims of Patriot Bank, First Alliance Bank, First State Bank and OmniBank (the "Motion") (Adv.

Dkt. 316)[1] and Mississippi Valley Title Insurance Company and Old Republic National Title

Insurance Company's Memorandum Brief in Support of Motion for Summary Judgment on

Insurance Contract Claims of Patriot Bank, First Alliance Bank, First State Bank and OmniBank

(Adv. Dkt. 317) filed by Mississippi Valley Title Insurance Company and Old Republic National

Title Insurance Company (the "Title Companies"); (2) Response of First Alliance Bank, Patriot

Bank, and First State Bank to Title Companies' Motion for Summary Judgment on Insurance

Contract Claims (the "Banks Response") (Adv. Dkts. 347 & 348) and Brief of First Alliance Bank,

Patriot Bank, and First State Bank in Response to Title Companies' Motion for Summary Judgment

---

[1] Citations to the record are as follows: (1) citations to docket entries in this adversary
proceeding are cited as "(Adv. Dkt. _____)" and (2) citations to docket entries in the main
bankruptcy case are cited as "(Case No. 09-03763-NPO, Dkt. _____)".

on Insurance Contract Claims (Adv. Dkt. 349) filed by First Alliance Bank ("First Alliance"), Patriot

Bank ("Patriot"), and First State Bank ("First State"); (3) Response to Mississippi Valley Title

Insurance Company and Old Republic National Title Insurance Company's Motion for Summary

Judgment on Insurance Contract Claims [Dkt. 316] (Adv. Dkt. 356) and Brief of OmniBank in

Response to Mississippi Valley Title Insurance Company and Old Republic National Title Insurance

Company's Motion for Summary Judgment on Insurance Contract Claims [Dkt. 316] (Adv. Dkt.

358) filed by OmniBank; and (4) Title Companies' Reply Brief in Support of Motion for Summary

Judgment on Insurance Contract Claims of Patriot Bank, First Alliance Bank, First State Bank and

OmniBank (Adv. Dkt. 380) filed by the Title Companies in the above-referenced adversary

proceeding (the "Adversary").

Having reviewed the pleadings and all the exhibits attached thereto, together with other

pleadings on file and the briefs submitted by the parties, the Court finds for the reasons set forth

below that the Title Companies are entitled to partial summary judgment as a matter of law on the

breach of contract claims of Patriot Bank, First Alliance, First State, and OmniBank (together, the

"Banks") and on the bad faith claims of the Banks but are not entitled to summary judgment on the

claims of the Banks for breach of the covenant of good faith and fair dealing.[2]

### Jurisdiction

This Court has jurisdiction over the subject matter of and the parties to this proceeding

pursuant to 28 U.S.C. § 1334. This matter is a core proceeding[3] as defined in 28 U.S.C.

---

[2] The following constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

[3] First State, Patriot, First Alliance, Holmes, First State, and OmniBank each allege in cross-claims they filed against the Title Companies that this matter is a core proceeding. *See*

§ 157(b)(2)(K).  Notice of the Motion was proper under the circumstances.

## Facts

In making its determination of facts on the Motion, this Court must view the evidence submitted by the parties in the light most favorable to the non-moving parties.  <u>McPherson v. Rankin</u>, 736 F.2d 175, 178 (5th Cir. 1984).  With that standard in mind, the Court finds that there are no genuine issues with respect to the following facts set forth in the briefs submitted to the Court:

**Title Insurance Policies**

1.    The breach of contract claims of the Banks involve six title insurance policies issued

---

Amended Crossclaim Against Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company (Adv. Dkt. 135); Crossclaim of Patriot Bank (Adv. Dkt. 177); Crossclaim of First Alliance Bank (Adv. Dkt. 178); Amended Crossclaim of Holmes County Bank (Adv. Dkt. 187); Amended Crossclaim of First State Bank (Adv. Dkt. 188); and Crossclaim (Adv. Dkt. 198) of OmniBank.  In each of their responses, however, the Title Companies allege that "[t]his matter is non-core under 28 U.S.C. § 157(b)(2)."  *See* Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Answer and Affirmative Defenses to Amended Cross-Claim of First Security Bank (Adv. Dkt. 142); Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Amended Answer and Affirmative Defenses to Patriot Bank's Cross-claim (Adv. Dkt. 217); Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Amended Answer and Affirmative Defenses to First Alliance Bank's Cross-Claim (Adv. Dkt. 212); Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Answer and Affirmative Defenses to Holmes County Bank's Amended Cross-Claim (Adv. Dkt. 215); Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Amended Answer and Affirmative Defenses to First State Bank's Amended Cross-Claim (Adv. Dkt. 213); and Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Amended Answer and Affirmative Defenses to OmniBank's Cross-Claim (Adv. Dkt. 216).  The Court need not address the core/non-core distinction because the parties clearly have consented to the final adjudication by this Court of all of their claims.  *See* 28 U.S.C. § 157(c)(2); *see also* <u>Oxford Expositions, LLC v. Questex Media Group (In re Oxford Expositions, LLC)</u>, No. 11-01095-DWH, 2011 WL 4074028 (Bankr. N.D. Miss. Sept. 13, 2011) (holding that power to consent under 28 U.S.C. § 157(c)(2) remains undisturbed after <u>Stern v. Marshall</u>, 131 S. Ct. 2594 (2011)).  Notably, the Title Companies have not mentioned in any of their numerous pre-trial filings that they have withdrawn their consent to this Court's authority.  *See* Fed. R. Bankr. P. 7012(b).

by the Title Companies.

**a.    Snowden Policies and First Alliance**

2.      First Alliance loaned $760,000.00 to Snowden Grove Investors, LLC ("Snowden"),

on November 22, 2004.

3.      To secure the loan, Snowden executed a deed of trust in favor of First Alliance on

certain real property located near Goodman Road in Southaven, DeSoto County, Mississippi, known

as Tracts 10E and 10F.

4.      The Title Companies issued First Alliance two title insurance policies, numbers M-

306425 and M-306426, dated December 2, 2004, which insured First Alliance's liens on Tracts 10E

and 10F. (Title Companies Ex. 1).[4]  Loan policy numbers M-306425 and M-306426 are hereinafter

referred to as the Snowden Policies.

**b.    Cedar Lake Policy I and First State**

5.      First State loaned $420,000.00 to Cedar Lake Investors, LLC ("Cedar Lake"), on

June 17, 2005.

6.      To secure the loan, Cedar Lake executed a deed of trust in favor of First State on

certain real property located near Goodman Road, in Southaven, DeSoto County, Mississippi, known

as Tracts 10G and 10H.

7.      The Title Companies issued First State a title insurance policy, number M-306506,

dated June 23, 2005, which insured First State's liens on Tracts 10G and 10H (Title Companies Ex.

---

[4] The exhibits submitted by the Title Companies in support of the Motion are cited as
"(Title Companies Ex. _____)".  The exhibits submitted by Patriot, First Alliance, and First State
in support of the Banks Response are cited as "(Banks Ex. _____)".  Holmes incorporates by
reference the exhibits submitted by Patriot, First Alliance, and First State.

2).  Loan policy number M-306506 is hereinafter referred to as the Cedar Lake Policy I.

### c. Cedar Lake Policy II and Patriot

8.      Patriot loaned $500,000.00 to Cedar Lake on June 22, 2005.

9.      To secure the loan, Cedar Lake executed a deed of trust in favor of Patriot on certain real property located near Goodman Road in Southaven, DeSoto County, Mississippi, known as Tracts 10J and 10K.

10.     The Title Companies issued Patriot a title insurance policy, number M-306520, dated August 2, 2005, which insured Patriot's liens on Tracts 10J and 10K (Title Companies Ex. 3).  Loan Policy number M-306520 is hereinafter referred to as the Cedar Lake Policy II.

### d. Madison Avenue Policies and OmniBank

11.     On February 2, 2007, and on March 14, 2007, OmniBank loaned approximately $775,804.50 to Madison Avenue Development Company, LLC ("Madison Avenue").

12.     To secure the loans, Madison Avenue executed a deed of trust in favor of OmniBank on certain real property located in Madison County, Mississippi, known as Tracts 2B and 2C.

13.     The Title Companies issued OmniBank two title insurance policies, number M-306737, dated February 6, 2007, and number M-306758, dated March 14, 2007, which insured OmniBank's first priority liens on Tracts 2B and 2C (Title Companies Ex. 4).  Loan policy numbers M-306737 and M-306758 are hereinafter referred to as the Madison Avenue Policies.

14.     At that time, Madison Avenue did not hold title to Tracts 2B and 2C.

### Title Insurance Claims

15.     Tracts 10E and 10F (collateral for the loans from First Alliance), Tracts 10G and 10H (collateral for the loans from First State), and Tracts 10J and 10K (collateral for the loans from

Patriot) comprise an unplatted tract of land referred to as the "Woodgreen Property."

16.    Through an affiliate, Mississippi Real Estate Dispositions, LLC, the Title Companies purchased all of the individual tracts that together comprise the Woodgreen Property.  The Court approved the purchases by the Title Companies in the Order Granting Motion to Approve Title Resolution Agreement, Including (I) Conditional Sale of Property Free and Clear of Liens, Interests, Encumbrances and Claims, (II) Recognition of Equitable Liens, (III) Certain Distributions in Respect of Certain Unsecured Claims, (IV) Resolution of Certain Litigation, and (V) Other Relief (the "Title Resolution Order") (Case No. 09-03763, Dkt. 683).

17.    Before First Alliance, First State, and Patriot made the loans, Chris Evans gave them a plat map of the Woodgreen Property showing the division of each of the parcels of land that provided for vehicular access to and from Goodman Road via a circular drive.  (Banks Ex. 11).  A copy of the plat map is attached to the end of this opinion as Appendix 1.  Goodman Road is a paved, public road that runs South along the Woodgreen Property, as shown in Appendix 1.  First Alliance, First State and/or Patriot allege for varying reasons that they were unaware that the platted map of the Woodgreen Property had not been approved by the City of Southaven and/or that there was no approved vehicular access to and from Goodman Road at the time they approved the loans.

**a.    Patriot**

18.    Because Patriot did not have an enforceable lien on Tracts 10J and 10K, Patriot submitted a title insurance claim to the Title Companies under the Cedar Lake Policy II.

19.    Through the same affiliate that purchased the Woodgreen Property, the Title Companies conveyed almost all of Tracts 10J and 10K to Patriot.  (Title Companies Ex. 11).  The Title Companies used part of Tracts 10J and 10K to convey a right-of-way to First State for a future

roadway to and from Goodman Road (Title Companies Ex. 16).

        **b.**    **First Alliance**

        20.    First Alliance did not have an enforceable lien on Tracts 10E and 10F and submitted a title insurance claim to the Title Companies under the Snowden Policies.

        21.    Through an affiliate, the Title Companies conveyed Tracts 10E and 10F to First Alliance and also a right-of-way to and from Goodman Road. (Title Companies Ex. 6). First Alliance alleges that it did not receive legal access to Tracts 10E and 10F and did not receive marketable title because the easement conveyed by the Title Companies did not provide vehicular access to Tracts 10E and 10F. Attached to the end of this opinion as Appendix 2 is the plat map obtained by the Title Companies (Banks Ex. 13).

        22.    Tracts 10E and 10F were free of liens and encumbrances when conveyed by the Title Companies to First Alliance.

        **c.**    **First State**

        23.    First State did not have an enforceable lien on Tracts 10G and 10H and submitted a title insurance claim to the Title Companies under the Cedar Lake Policy I in November, 2009. (Title Companies Ex. 8).

        24.    Through an affiliate, the Title Companies conveyed Tracts 10G and 10H to First State. (Title Companies Ex. 9).

        25.    Tracts 10G and 10H were free of liens and encumbrances when conveyed to First State.

        26.    Through an affiliate, the Title Companies conveyed to First State a roadway easement to and from Goodman Road for the benefit of Tracts 10G and 10H. (Title Companies Ex. 16). First

State denies that the easement provides a right of legal access to and from Goodman Road.

### d.    OmniBank

27.    OmniBank did not have an enforceable lien on Tracts 2B and 2C and submitted a claim to the Title Companies under the Madison Avenue Policies.

28.    Through an affiliate, the Title Companies purchased Tracts 2B and 2C (which are not part of the Woodgreen Property) and conveyed Tracts 2B and 2C to OmniBank (Title Companies Ex. 13).

**Adversary Proceeding**

29.    On January 18, 2010, Derek A. Henderson, the duly appointed chapter 7 trustee for the bankruptcy estate of Chris Evans and for jointly-administered related cases (the"Trustee"), filed a First Amended Complaint (Adv. Dkt. 3) against the Banks, as well as other banks, and the Title Companies.   The Trustee asked the Court to determine the extent, validity and priority of the liens granted by entities controlled by Chris Evans on multiple tracts of real property.  At issue here are parcels of land that comprise Tracts 2 and 10.

30.    On April 28, 2011, Patriot filed its Crossclaim of Patriot Bank (Adv. Dkt. 177).  The Title Companies filed Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Answer and Affirmative Defenses to Patriot Bank's Cross-Claim (Adv. Dkt. 207) on May 9, 2011.

31.    On April 28, 2011,  First Alliance filed its Crossclaim of First Alliance Bank (Adv. Dkt. 178).  The Title Companies filed Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Answer and Affirmative Defenses to First Alliance Bank's Cross-Claim (Adv. Dkt. 202) on May 9, 2011.

32.     On April 29, 2011, First State filed its Amended Crossclaim of First State Bank (Adv. Dkt. 188).  The Title Companies filed Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Answer and Affirmative Defenses to First State Bank's Amended Cross-claim (Adv. Dkt. 203) on May 9, 2011.

33.     On May 4, 2011, OmniBank filed its Crossclaim (Adv. Dkt. 198).  The Title Companies filed Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Answer and Affirmative Defenses to OmniBank's Cross-Claim (Adv. Dkt. 206) on May 9, 2011.

34.     The Banks asserted the following claims against the Title Companies: (1) fraud (direct and indirect), (2) negligent misrepresentation, (3) negligent failure to audit, supervise, monitor, and retain Charles Evans, (4) breach of independent agreement to cure, (5) promissory/equitable estoppel, (6) aiding and abetting, (7) breach of closing protection letter, (8) contempt, breach of contract (title insurance policy), (9) bad faith, and (10) attorneys' fees.

35.     The Title Companies filed the Motion on August 26, 2011.  They seek partial summary judgment on the following claims of the Banks: (1) breach of title insurance policy, (2) bad faith, and (3) attorneys' fees.  They contend that these claims are not covered by the title insurance policies or, in the alternative, that the title insurance policies exclude or except the claims from coverage.  The Title Companies address the contract claims of the Banks together in the Motion because the title insurance policies are based on the same standardized form developed and approved by the American Land Title Association ("ALTA") in 1992.

### Introduction

The Court pauses here to discuss the procedural posture of the Adversary insofar as the Banks

are concerned.  The Motion is the second of two motions that the Title Companies have filed in the Adversary seeking summary judgment on claims asserted by Patriot, First Alliance, First State, and OmniBank.  In their first motion, Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Motion for Partial Summary Judgment (Adv. Dkt. 301), the Title Companies seek summary judgment on the Banks' claims for (1) fraud (direct and indirect), (2) negligent misrepresentation, (3) negligent failure to audit, supervise, monitor, and retain Charles Evans, (4) breach of independent agreement to cure, (5) promissory/equitable estoppel, (6) aiding and abetting, and (7) breach of closing protection letter.  In this opinion, the Court disposes of the Title Companies' request for partial summary judgment only on the insurance contract claims asserted by the Banks and on their claims for bad faith, breach of the covenant of good faith and fair dealing, and attorneys' fees.

## Discussion

The Court must determine if the material facts establish the existence of a genuine dispute as to whether the conveyances fulfilled the obligations of the Title Companies under each of the title insurance policies.

### A.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a),[5] made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, summary judgment is appropriate when viewing the evidence in the light most favorable to the nonmoving party, the pleadings, depositions, answers to

---

[5] Pursuant to the Rules Enabling Act, 28 U.S.C. § 2072, Rule 56 of the Federal Rules of Civil Procedure was amended, as of December 1, 2010.  The amendment did not change the standard for granting summary judgment.  *See* Fed. R. Civ. P. 56 advisory committee's note to 2010 Amendments ("The standard for granting summary judgment remains unchanged.").

interrogatories, and admissions, together with affidavits, if any, show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). By its express terms, Rule 56(a) provides for partial summary judgment. Fed. R. Civ. P. 56(a). Once the moving party has made its required showing, Rule 56(c)(1) further provides, in relevant part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

"Summary judgment . . . serves, among other ways, to root out, narrow . . . and focus the issues, if not resolve them completely." Calpetco 1981 v. Marshall Exploration, Inc., 989 F.2d 1408, 1415 (5th Cir. 1993). The effect of a partial summary judgment, if granted, is to lessen the length and complexity of trial on the remaining issues, "all to the advantage of the litigants, the courts, those waiting in line for trial, and the American public in general." Id. Ultimately, the role of this Court is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249; *see* Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000). Even absent the presence of any genuine issue, the Court has the discretion to deny motions for summary judgment and allow parties to proceed to trial so that the record might be more fully developed for the trier of fact. *See* Kunin v. Feofanov, 69 F.3d 59, 62 (5th Cir. 1995); Black v. J.I. Case Co., 22 F.3d 568, 572 (5th Cir. 1994); Veillon v. Exploration Services, Inc., 876 F.2d 1197, 1200 (5th Cir. 1989).

**B.**     **Pertinent Title Insurance Policy Provisions**

All of the title insurance policies at issue here contain identical terms and provisions, with

the exception of the attached schedules.

**1.**     **Covered Risks**

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS
FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS
AND STIPULATIONS, MISSISSIPPI VALLEY TITLE INSURANCE COMPANY,
a Mississippi Corporation, and OLD REPUBLIC NATIONAL TITLE INSURANCE
COMPANY, a Minnesota Corporation, together herein called the Company . . .,
insure, as of Date of Policy shown in Schedule A, against loss or damage, not
exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by
the insured by reason of:

1.     Title to the estate or interest described in Schedule A being vested other than
       as stated therein;

2.     Any defect in or lien or encumbrance on the title;

3.     Unmarketability of the title;

4.     Lack of a right of access to and from the land;

5.     The invalidity or unenforceability of the lien of the insured mortgage upon the
       title;

6.     The priority of any lien or encumbrance over the lien of the insured mortgage;

The Company will also pay the costs, attorney's fees and expenses incurred in
defense of the title or the lien of the insured mortgage, as insured, but only to the
extent provided in the Conditions and Stipulations.

(Title Companies Exs. 1-4).

**2.**     **Exclusions from Coverage**

The following matters are expressly excluded from the coverage of this policy and
the Company will not pay loss or damage, costs, attorneys' fees or expenses which
arise by reason of:

1.     (a)     Any law, ordinance, or governmental regulation (including but not

limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land. . . .

(b)     Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

* * *

3.     Defects, liens, encumbrances, adverse claims or other matters:

(a)     created, suffered, assumed or agreed to by the insured claimant;

(b)     not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

(Title Companies Exs. 1-4).

### 3.     Conditions and Stipulations

*1.     Definition of Terms.*

The following terms when used in this policy mean:
* * *
(c)     "knowledge" or "known": actual knowledge, not constructive knowledge or notice which may be imputed to an insured by reason of the public records as defined in this policy or any other records which impart constructive notice of matters affecting the land.
* * *
(g)     "unmarketability of the title": an alleged or apparent matter affecting the title to the land, not excluded or excepted from coverage, which would entitle a purchaser of the estate or interest described in Schedule A or the insured mortgage to be released from the obligation to purchase by virtue of a contractual condition requiring the delivery of marketable title.
* * *
*4.     Defense and Prosecution of Actions; Duty of Insured Claimant to Cooperate.*

* * *

(b)     The Company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, or to prevent or reduce loss or damage to the insured.

* * *

*8.     Limitation of Liability.*

(a)     If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, or otherwise establishes the lien of the insured mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

(Title Companies Exs. 1-4).

## 4.     Exceptions from Coverage

Schedule B-1

This Policy does not insure against loss or damage by reason of the following:

* * *

Item 3.     Rights of parties in possession, deficiency in quantity of land, boundary line disputes, encroachments, roadways, unrecorded servitudes or easements, any matter not of record including lack of access which would be disclosed by an accurate survey and inspection of the property, and easements or other uses of subject property not visible from the surface.

(Title Companies Exs. 1-4, Schedule B-1).

## C.     Breach of Contract Claims

First Alliance, First State, Patriot , and OmniBank allege that the Title Companies breached the title insurance policies by failing to indemnify them for all losses and damages covered under the title insurance policies.  The Title Companies, on the other hand, argue that they cured the title defects by conveying to the Banks the collateral that they bargained to receive.  For this reason, ¶8(a) of the title insurance policies limits their liability to the curative actions that they have already performed, according to the Title Companies.  First Alliance, First State, and Patriot counter that the Title Companies did not cure the title defects because the conveyances: (1) created an illegal subdivision; (2) failed to provide vehicular access to and from the land; and (3) failed to provide

Page 15 of  21

marketable title.  The Court addresses the claims of First Alliance, First State, and Patriot separately from the claims of OmniBank because First Alliance, First State, and Patriot, unlike OmniBank, have demonstrated the presence of disputed facts that preclude entry of summary judgment in favor of the Title Companies on their breach of contract claims.

### 1.    First Alliance, First State, and Patriot

#### a.    Sudivision and Conveyance of the Woodgreen Property

First Alliance, First State, and Patriot allege that because the Title Companies did not obtain the approval of the City of Southaven before they conveyed the subdivided tracts to them, the conveyances violated Southaven's subdivision ordinance and did not resolve the title defects. Section 12-4 of the city's regulations states:

> It shall be unlawful for any person being the owner, agent or person having control of any land within the incorporated areas of the city to subdivide or lay out such land in lots unless by a plat in accordance with the regulations contained herein. No lots shall be sold nor any plat recorded until the plat has been approved as herein provided.

(Banks Ex. 10).  Southaven's approval for subdivding property requires a three-part plat process, according to First Alliance, First State, and Patriot (Banks Ex. 9).

The Title Companies contend that whether the conveyances violated Southaven's ordinance is irrelevant because even if a violation occurred, the deeds are "valid." The Title Companies rely on Seymour v. Evans, 608 So. 2d 1141 (Miss. 1992), where the Mississippi Supreme Court held that a conveyance in violation of subdivision regulations was not invalid.  Id. at 1146.  In the alternative, the Title Companies maintain that First Alliance, First State, and Patriot misstate the facts because they themselves did not purchase the Woodgreen Property as a whole but purchased Tracts 10E, 10F, 10G, 10H, 10J, and 10K individually.  In other words, the aforementioned tracts of land that

comprise the Woodgreen Property were already subdivided when the Title Companies purchased them. The Title Companies characterize the arguments of First Alliance, First State, and Patriot as a collateral attack on the Title Resolution Order that approved the purchases of the Woodgreen Property through a series of supplemental orders (Case No. 09-03763-NPO, Dkts. 823, 824, 825, & 827). Finally, the Title Companies point out that the ordinance prohibits only the "sale" of unapproved lots but they did not sell the Woodgreen Property to anyone.

### b.   Right of Access to and from the Land

First Alliance, First State, and Patriot also contend that the Title Companies failed to fulfill their obligations under the title insurance policies because the conveyances provided them with only pedestrian/physical access (the legal right to walk onto the property) but not with vehicular access to and from Goodman Road. (Banks Ex. 13). There is no dispute that the title insurance policies insure access to and from the respective properties. There is a dispute, however, as to whether the coverage extends to "physical" access.

The Title Companies have obtained their own plat map of the Woodgreen Property, as shown in Appendix 2, which is attached to the end of this opinion. The Title Companies' plat map (Title Companies Ex. 16) shows the easement they obtained for the benefit of First Alliance and First State. Rather than a circular drive, there is a path to and from Goodman Road. The Title Companies insist that this right-of-way fulfills their obligation to provide "legal" access to the tracts of land. First Alliance, First State, and Patriot bemoan the loss of the circular drive that Chris Evans initially showed them, as reflected in Appendix 1. In comparison, the plat map provided by Chris Evans would allow vehicular traffic onto all of the property, as reflected in Appendix 2. They dispute the practicalities of the access provided by the right-of-way.

### c.     Marketability

Finally, First Alliance, First State, and Patriot insist that they did not receive marketable title because of the absence of vehicular access to their parcels of land.  According to the Title Companies, however, First Alliance, First State, and Patriot fail to recognize the distinction between the marketability of "land" and the marketability of "title."  Because it is undisputed that First Alliance, First State, and Patriot obtained title to their respective parcels of land free and clear of liens and encumbrances, the Title Companies claim they are entitled to summary judgment, in that they succeeded in curing the title defects.  The Title Companies insist that First Alliance, First State, and Patriot should not be allowed to label as "unmarketable" title to property that they themselves thought was adequate to secure their loans.

The arguments of the parties have amply demonstrated the existence of numerous disputed factual issues and mixed questions of fact and law concerning the conveyances so as to preclude entry of summary judgment on the ultimate question as to whether the Title Companies succeeded in curing the title defects.  This result is mandated by the Title Companies' alleged violation of the subdivision ordinance and by the presence of access and marketability issues related to the physical condition of the property.  These factual disputes require resolution by trial, not by summary judgment.

### 2.     OmniBank

OmniBank alleges that the Title Companies breached the Madison Avenue Policy by failing to pay the face amount of insurance or cure the title defect.  The Title Companies argue that ¶8(a), known as the "Limitation of Liability" provision, expressly grants them the right to limit their liability by curing any title defect and that the undisputed facts in this matter show they succeeded

in doing so. Specifically, through the Title Resolution Order, the Title Companies caused Tracts 2B and 2C to be deeded to Madison Avenue, the effect of which was to render valid OmniBank's lien on Tracts 2B and 2C.  According to the Title Companies, their liability is limited under ¶8(a) to the curative action that they have already performed.  They did not assume, and are not legally required to assume, the risk of ensuring that OmniBank's loans were paid off or that the real property that secured OmniBank's loans maintained its value in the marketplace.  *See* Rancher's Life Ins. Co. v. Banker's Fire & Marine Ins. Co., 190 So. 2d 897, 899 (Miss. 1966).

OmniBank maintains that the Title Companies are liable for the loan deficiency and attorney fees attributable to Tracts 2B and 2C, notwithstanding ¶8(a), because the title insurance policies are contracts of indemnity against actual monetary loss or damage.  OmniBank's arguments echo those rejected by this Court in a separate adversary proceeding that involved the Title Companies.  The Court there found language similar to ¶8(a) to be clear and unambiguous.  G&B Investments, Inc. v. Henderson (In re Evans), Adv. No. 10-00040-NPO, 2011 WL 4712176, at *31-32 (Bankr. S.D. Miss. Oct. 7, 2011).  Unlike First Alliance, First State, and Patriot, OmniBank has not pointed to any material disputed issue that would warrant a different outcome upon trial.  The Court, therefore, concludes that the Title Companies fully performed their obligations and do not owe OmniBank for any monetary losses or damages it may have sustained with regard to Tracts 2B and 2C.

**D.     Bad Faith Claims**

In Mississippi, in order to recover punitive damages against an insurance company for its "bad-faith" refusal of coverage, the insured must demonstrate (1) that there was no arguable or legitimate reason to deny coverage and (2) that the insurer acted willfully, maliciously, or with gross and reckless disregard for the insured's rights.  Liberty Mut. Ins. Co. v. McKneely, 862 So. 2d 530,

533 (Miss. 2003).  As a preliminary matter, the insured must also demonstrate that the insurance company in fact owed the obligation.  Essinger v. Liberty Mutual Fire Ins. Co., 529 F.3d 264, 271 (5th Cir. 2008).

### 1.      First Alliance, First State, and Patriot

Although the Court has denied summary judgment with respect to the breach of contract claims of First Alliance, First State, and OmniBank, there is no evidence in the record that the Title Companies acted with malice.  Indeed, the Title Companies paid $2,648,705.34 to purchase Tracts 10E, 10F, 10G, 10H, 10J, 10K and Tracts 2B and 2C (Case No. 09-03763-NPO, Dkt. 683) in order to resolve the title defects at issue in the Motion. The Title Companies are entitled to partial summary judgment on their bad faith claims.

### 2.      OmniBank

The Court has found that the Title Companies fulfilled their obligations under the Madison Policy by conveying Tracts 2B and 2C to OmniBank.  Given that OmniBank has not shown that the Title Companies owe any additional obligations with respect to Tracts 2B and 2C, punitive damages are unavailable to OmniBank as a matter of law, and the Title Companies are entitled to partial summary judgment on OmniBank's bad faith claims with respect to Tracts 2B and 2C.

### Conclusion

In conclusion, the Court finds that the Motion should be granted in part and denied in part.  The Court finds that there are no disputed issues of material fact and concludes that the Title Companies are entitled to partial summary judgment as a matter of law on the breach of contract claim of OmniBank and on the bad faith claims of the Banks.  The Court further finds that there are disputed issues of material fact that preclude the entry of partial summary judgment in favor of the

Title Companies on the breach of contract claims of First Alliance, First State, and Patriot.

SO ORDERED.

_____

Neil P. Olack
United States Bankruptcy Judge
Dated:  December 15, 2011



PLAT FOR
CHRIS EVANS

SITUATED IN THE SOUTHEAST QUARTER OF
THE SOUTHWEST QUARTER AND THE SOUTHWEST
QUARTER OF THE SOUTHEAST QUARTER OF
SECTION 21, TOWNSHIP 1 SOUTH, RANGE 7 WEST
SOUTHAVEN, DESOTO COUNTY, MISSISSIPPI

T. E. McDONALD, INC.
registered land surveyor no. 1441
post office box 1292, Jackson, ms 39215

SCALE 1" = 160'                    JULY 27, 2004

GOODMAN ROAD

Appendix 1



**Appendix 2**