## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

      JON CHRISTOPHER EVANS,                       CASE NO. 09-03763-NPO

      DEBTOR.                                     CHAPTER 7

JOINTLY ADMINISTERED WITH RELATED CASES


DEREK A. HENDERSON, TRUSTEE                    PLAINTIFF
FOR THE BANKRUPTCY ESTATE OF
JON CHRISTOPHER EVANS AND
JOINTLY ADMINISTERED RELATED
CASES

V.                                 ADV. PROC. NO.  10-00005-NPO

COMMUNITY BANK OF MISSISSIPPI,          DEFENDANTS
BANCORPSOUTH BANK, FIRST BANK,
STATE BANK & TRUST COMPANY,
BANK OF YAZOO CITY, BANK OF THE
SOUTH, CITIZENS NATIONAL BANK
OF MERIDIAN, HOLMES COUNTY
BANK & TRUST COMPANY, BANK
FIRST FINANCIAL SERVICES,
RENASANT BANK, METROPOLITAN
BANK, FIRST COMMERCIAL BANK,
NATIONAL BANK OF COMMERCE,
GUARANTY BANK & TRUST
COMPANY, CADENCE BANK,
BRITTON & KOONTZ NATIONAL
BANK, WACHOVIA BANK, SOUTH
TRUST BANK, OMNI BANK,
MERCHANTS & PLANTERS BANK,
FIRST BANK OF MCCOMB, HERITAGE
BANKING GROUP, THE CARTHAGE
BANK, BANKPLUS, UNION PLANTERS
BANK, PEOPLES BANK & TRUST
COMPANY, FIRST TRUST BANK FOR
SAVINGS, FIRST ALLIANCE BANK,
FIRST STATE BANK, FIRST SECURITY
BANK, PATRIOT BANK, TRUST ONE

**BANK, FIRST TENNESSEE BANK,
BANK OF BARTLETT, BANK OF
AMERICA, MERCHANTS & FARMERS
BANK, BANK OF FOREST, COPIAH
BANK, CONSUMER NATIONAL BANK,
REGIONS BANK, MISSISSIPPI VALLEY
TITLE INSURANCE COMPANY AND
OLD REPUBLIC NATIONAL TITLE
INSURANCE COMPANY**

**MEMORANDUM OPINION AND ORDER ON MISSISSIPPI VALLEY TITLE
INSURANCE COMPANY AND OLD REPUBLIC NATIONAL TITLE
INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT
ON INSURANCE CONTRACT CLAIMS OF PATRIOT BANK,
FIRST ALLIANCE BANK, FIRST STATE BANK AND OMNIBANK [SIC]**

There came on for consideration (1) Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Motion for Summary Judgment on Insurance Contract Claims of Patriot Bank, First Alliance Bank, First State Bank and OmniBank [sic] (the "Motion")[1] (Adv. Dkt. 318) and Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Memorandum Brief in Support of Motion for Summary Judgment on Insurance Contract Claims of First Security Bank and Holmes County Bank (Adv. Dkt. 319) filed by Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company (the "Title Companies"); (2) Response of Holmes County Bank to Title Companies' Motion for Summary Judgment on Insurance Contract Claims (the "Holmes Response") (Adv. Dkt. 352) and Brief of Holmes County Bank in Response to Title Companies' Motion for Summary Judgment on Insurance Contract Claims (Adv. Dkt. 353) filed by Holmes County Bank ("Holmes"); (3) First

---

[1] The caption of the Motion mistakenly names Patriot Bank, First Alliance Bank, First State Bank, and OmniBank, when it should refer to First Security Bank and Holmes County Bank. The mistake, which appears only in the caption in the Motion (and nowhere else), and has not caused any confusion among the parties.

Security Bank's Response to the Title Insurance Companies' Motion for Summary Judgment on Insurance Contract Claims (the "FSB Response") (Adv. Dkt. 357) and Memorandum in Support of First Security Bank's Response to the Title Insurance Companies' Motion for Summary Judgment on Insurance Contract Claims (the "FSB Response Brief") (Adv. Dkt. 359) filed by First Security Bank ("FSB"); and (4) Reply Brief in Support of Motion for Summary Judgment on Insurance Contract Claims of First Security Bank and Holmes County Bank (Adv. Dkt. 379) filed by the Title Companies in the above-referenced adversary proceeding (the "Adversary").

Having reviewed the pleadings and all the exhibits attached thereto, together with other pleadings on file and the briefs submitted by the parties, the Court finds for the reasons set forth below that the Motion should be granted in part and denied in part.[2]

### Jurisdiction

This Court has jurisdiction over the subject matter of and the parties to this proceeding pursuant to 28 U.S.C. § 1334.   This matter is a core proceeding[3] as defined in 28 U.S.C.

---

[2] The following constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

[3] FSB and Holmes allege in cross-claims they filed against the Title Companies that this matter is a core proceeding. *See* Amended Crossclaim Against Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company (Adv. Dkt. 135); Amended Crossclaim of Holmes County Bank (Adv. Dkt. 187).  In their responses, however, the Title Companies allege that "[t]his matter is non-core under 28 U.S.C. § 157(b)(2)."  *See* Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Answer and Affirmative Defenses to Amended Cross-Claim of First Security Bank (Adv. Dkt. 142); Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Amended Answer and Affirmative Defenses to Holmes County Bank's Amended Cross-Claim (Adv. Dkt. 215).  The Court need not address the core/non-core distinction because the parties clearly have consented to the final adjudication by this Court of all of their claims.  *See* 28 U.S.C. § 157(c)(2); *see also* <u>Oxford Expositions, LLC v. Questex Medical Group (In re Oxford Expositions, LLC)</u>, No. 11-01095-DWH, 2011 WL 4074028 (Bankr. N.D. Miss. Sept. 13, 2011) (holding that power to consent under 28 U.S.C. § 157(c)(2)

§ 157(b)(2)(K).  Notice of the Motion was proper under the circumstances.

## Facts

In making its determination of facts on the Motion, this Court must view the evidence submitted by the parties in the light most favorable to the non-moving parties.  McPherson v. Rankin, 736 F.2d 175, 178 (5th Cir. 1984).  With that standard in mind, the Court finds that there are no genuine issues with respect to the following facts set forth in the briefs submitted to the Court:

1.    The claims of Holmes and FSB arise out of four separate title insurance policies issued by the Title Companies.

**Holmes Title Insurance Policies**

2.    On April 28, 2008, the Title Companies issued Holmes a title insurance policy, bearing policy number LP-107019, in the amount of $780,127.00, on a parcel of land in Madison County, Mississippi, purportedly owned by Park Place Commons, LLC ("Park Place"), an entity controlled by Jon Christopher Evans ("Chris Evans") (Title Companies Ex. 2).[4]  Loan policy number LP-107019 is hereinafter referred to as the Park Place Policy.

---

remains undisturbed after Stern v. Marshall, 131 S. Ct. 2594 (2011)).  Notably, the Title Companies have not mentioned in any of their numerous pre-trial filings that they have withdrawn their consent to this Court's authority.  *See* Fed. R. Bankr. P. 7012(b).

[4] The exhibits submitted by the Title Companies in support of the Title Companies Motion are cited as "(Title Companies Ex. _____)". The Title Companies also incorporate by reference the exhibits attached to their previous cross-motion for partial summary judgment, which is discussed later in the Introduction section of this opinion.  Those exhibits are cited as "(Title Companies Cross-Motion Ex. _____)".  The exhibits submitted by FSB in support of the FSB Response are cited as "(FSB Ex. _____)".  FSB also incorporates by reference the exhibits attached to its previous summary judgment motion, which is discussed later in this opinion. Those exhibits are cited as "(FSB Motion Ex. _____)".  The exhibits submitted by Holmes in support of the Holmes Response are cited as "(Holmes Ex. _____)".

a.   **Park Place Policy**

3.     The parcel of land subject to the Park Place Policy is referred to as Tract 1G.

4.     The Park Place Policy insured Holmes against any loss or damage sustained because of "Title to [Tract 1G] being vested other than as stated in Schedule A" and/or because of a "defect in the Title caused by . . . fraud." (Title Companies Ex. 2). According to Schedule A, which was attached to the Park Place Policy, title to Tract 1G was vested in Park Place. At that time, however, title to Tract 1G was vested in Old Agency Business Park, LLC ("Old Agency"), a separate entity controlled by Chris Evans (Holmes Ex. 2). There was also an outstanding lien against Tract 1G in favor of another bank that was not disclosed in the Park Place Policy and was not excepted from coverage.

5.     Before the Title Companies sold Holmes the Park Place Policy, Holmes loaned Park Place $780,127.00, ostensibly to finance the construction of an office building. To secure the loan, Park Place executed a deed of trust in favor of Holmes.

6.     On February 12, 2009, the Title Companies issued Holmes a title insurance policy, number LP-107085, in the amount of $800,292.00, on a parcel of land in Madison County, Mississippi, purportedly owned by Nottaway Pointe, LLC ("Nottaway"), an entity controlled by Chris Evans (Title Companies Ex. 2). Loan policy number LP-107085 is hereinafter referred to as the Nottaway Policy.

b.   **Nottaway Policy**

7.     The tract of land subject to the Nottaway Policy lies contiguous to Tract 1G and is referred to as Tract 1F.

8.     The Nottaway Policy insured Holmes against any loss or damage sustained because

of "Title [to Tract 1F] being vested other than as stated in Schedule A" and/or because of a "defect in the title caused by . . . fraud." (Title Companies Ex. 2). According to Schedule A, which was attached to the Nottaway Policy, title to Tract 1F was vested in Old Agency. There were outstanding liens against Tract 1F in favor of other banks that were not disclosed in the Nottaway Policy and not excepted from coverage.

9.      Before the Title Companies issued Holmes the Nottaway Policy, Holmes loaned Nottaway $525,000.00. Nottaway, however, never executed a deed of trust on Tract 1F in favor of Holmes (Holmes Ex. 3).

**FSB Title Insurance Policies**

10.     On May 22, 2008, the Title Companies issued FSB a title insurance policy, bearing policy number LP-107030, in the amount of $900,165.00, on two tracts of land in DeSoto County, Mississippi, purportedly owned by Brashear Heath, LLC ("Brashear"), an entity controlled by Chris Evans. (Title Companies Ex. 1). Loan policy number LP-107030 is hereinafter referred to as the Brashear Policy.

     **a.      Brashear Policy**

11.     The two tracts of land subject to the Brashear Policy are referred to as Tracts 10O and 10E.

12.     The Brashear Policy insured FSB against any loss or damage sustained because of "Title [to Tracts 10E and 10O] being vested other than as stated in Schedule A" and/or because of a "defect in the Title caused by . . . fraud." (Title Companies Ex. 1). According to Schedule A, which was attached to the Brashear Policy, title to Tracts 10O and 10E was vested in Brashear.

13.     Before the Title Companies issued FSB the Brashear Policy, Charles H. Evans

("Charles Evans"), as an "approved attorney" for the Title Companies, delivered to FSB a certificate of title indicating that title to Tracts 10O and 10E was vested in James C. Hensen and Cassandra E. Hensen (the "Hensens"). (FSB Motion Ex. 3). At that time, however, the Hensens no longer held title to Tracts 10O and 10E but had sold the properties to Woodgreen Development Corporation, a Mississippi company formed by Chris Evans.

14.     Charles Evans and Chris Evans (together, the "Evans Brothers") are brothers.

15.     After FSB received the erroneous certificate of title, Brashear executed on April 28, 2008, a deed of trust in favor of FSB as security for a loan in the amount of $900,165.00, ostensibly for the purchase of Tracts 10O and 10E. (FSB Motion Exs. 5 & 7).

16.     According to appraisals obtained by FSB, the fair market value of Tracts 10O and 10E was $1,437,400.00 when the Title Companies issued the Brashear Policy. (FSB Motion Ex. 16).

17.     The value of FSB's lien on Tracts 10O and 10E, as insured, was zero.

18.     On January 20, 2009, the Title Companies issued FSB a title insurance policy, bearing policy number LP-107084, in the amount of $801,128.00, on a tract of land in DeSoto County, Mississippi, owned by Twin City Commons Development, LLC ("Twin City"), an entity controlled by Chris Evans. (Title Companies Ex. 1). Loan policy number LP-107084 is hereinafter referred to as the Twin City Policy.

**b.     Twin City Policy**

19.     The property subject to the Twin City Policy is referred to as Tract TC-2B.

20.     The Twin City Policy insured FSB against any loss or damage sustained because of "Title [to Tract TC-2B] being vested other than as stated in Schedule A" and/or because of a "defect in the Title caused by . . . fraud." (Title Companies Ex. 1). According to Schedule A, which was

attached to the Twin City Policy, title to Tract TC-2B was vested in Twin City.

21.    Before the Title Companies issued FSB the Twin City Policy, Charles Evans, as an "approved attorney" for the Title Companies, delivered to FSB a certificate of title indicating that Twin City owned Tract TC-2B, free and clear of any liens.  (FSB Motion Ex. 4).  Actually, there were two prior deeds of trust and other liens on Tract TC-2B in favor of other banks from whom the Evans Brothers had borrowed funds.

22.    After FSB received the erroneous certificate of title, Twin City executed on January 16, 2009, a deed of trust on Tract TC-2B to FSB as security for a loan in the amount of $801,128.00. (FSB Motion Exs. 6 & 8).

23.    According to an appraisal obtained by FSB, the fair market value of Tract TC-2B was $1,012,800.00 when the Title Companies issued the Twin City Policy. (FSB Motion Ex. 16).

24.    The value of FSB's lien on Tract TC-2B, as insured, was zero.

**Title Insurance Claims**

    **a.**    **Holmes**

25.    Holmes submitted title insurance claims to the Title Companies on Tract 1F and Tract 1G under the Park Place Policy and the Nottaway Policy.

26.    The Title Companies unsuccessfully attempted to cure the title defect on Tract 1F, and on February 4, 2010, paid Holmes $525,000.00, the fair market value of Tract 1F, both as of the date of the claim and the date of payment (Title Companies Ex. 5).  The Title Companies did not afford Holmes an opportunity to chose which of these two valuation dates to apply.

27.    Through an affiliate, the Title Companies purchased Tract 1G and on August 18, 2010, conveyed Tract 1G, free and clear of all liens and encumbrances, to Holmes.  (Title Companies

Exs. 4 & 6).

    **b.**    **FSB**

28.    In September, 2009, FSB concluded that because of fraud by the Evans Brothers, titles to Tracts 10O and 10E, and Tract TC-2B were not as insured by the Title Companies. Although the Title Companies admit that Charles Evans provided false information to FSB, they neither admit nor deny that his actions constituted fraud against FSB.[5]

29.    On September 25, 2009, FSB submitted a claim to the Title Companies on Tracts 10O and 10E.  (FSB Motion Ex. 11).

30.    On November 10, 2009, FSB submitted a claim to the Title Companies on Tract TC-2B. (FSB Motion Ex. 12).

31.    Following the receipt of FSB's claims, the Title Companies unsuccessfully attempted to cure the title defects on Tracts 10O and 10E, and on Tract TC-2B.  FSB alleges that their attempts were futile and part of a scheme to avoid paying FSB its full measure of damages.

32.    The Title Companies concluded that the value of FSB's liens, as insured, was zero, and they elected to pay FSB's claims.

33.    On May 6, 2010, the Title Companies paid FSB $460,000.00 under the Brashear Policy (Title Companies Cross-Motion Ex. C) and another $460,000.00 under the Twin City Policy (Title Companies Cross-Motion Ex. E).  FSB contends that these payments were insufficient to indemnify it for the losses it sustained.  (FSB Motion Ex. 16).

34.    FSB accepted the Title Companies' payments of their claims, subject to a full

---

[5] On January 18, 2011, the Evans Brothers pled guilty to conspiracy to commit money laundering and bank fraud.

reservation of rights to assert claims against them arising out of the Brashear Policy and the Twin City Policy. (FSB Motion Ex. 13).

35.     The amounts paid by the Title Companies represented the fair market value of Tracts 10O and 10E, and Tract TC-2B, both as of the date the claims were made by FSB on September 25, 2009, and on November 10, 2009, respectively, and the date both payments were made by the Title Companies on May 6, 2010.  (Title Companies Ex. 3).

**Adversary Proceeding**

36.     On January 18, 2010, Derek A. Henderson, the duly appointed chapter 7 trustee for the bankruptcy estate of Chris Evans and for jointly-administered related cases (the "Trustee"), filed a First Amended Complaint (Adv. Dkt. 3) against Holmes, FSB, as well as other banks, and the Title Companies.   The Trustee asked the Court to determine the extent, validity, and priority of liens granted by entities controlled by Chris Evans on multiple tracts of real property.  At issue here are parcels of land that comprise Tracts 1, 10, and TC.

37.     On December 1, 2010, FSB filed the Amended Crossclaim Against Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company (the "FSB Cross-Claim") (Adv. Dkt. 135).  In the FSB Cross-Claim, FSB asserts four causes of action against the Title Companies:

      Count I:   Breach of Contract
      Count II:  Breach of Obligation of Good Faith and Fair Dealing in Claims Handling
      Count III: Negligence, Including Negligent Supervision and Retention
      Count IV: Aiding and Abetting

38.     On December 27, 2010, the Title Companies filed Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Answer and Affirmative Defenses to Amended Cross-Claim of First Security Bank (Adv. Dkt. 142).

39.     On April 29, 2011, Holmes filed the Amended Crossclaim of Holmes County Bank (the "Holmes Cross-Claim") (Adv. Dkt. 187).  In the Holmes Cross-Claim, Holmes asserts the following claims against the Title Companies: (1) breach of contract, (2) bad faith and tortious breach of contract, (3) negligent failure to audit, supervise or monitor Charles Evans, and (4) attorney's fees.

40.     On May 16, 2011, the Title Companies filed Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Amended Answer and Affirmative Defenses to Holmes County Bank's Amended Cross-Claim (Adv. Dkt. 215).

41.     The Title Companies filed the Motion on August 26, 2011. They seek partial summary judgment declaring that the amounts they paid FSB were an appropriate measure of FSB's losses under the Brashear Policy and the Twin City Policy.  The Title Companies calculated FSB's losses based upon the fair market values of Tracts 10O and 10E, and Tract TC-2B as of the date FSB's claims were made and paid.  They seek partial summary judgment declaring that the amount they paid Holmes under the Nottaway Policy was appropriately based on the fair market value of Tract 1F as of the date Holmes's claims were made and paid and that their conveyance of Tract 1G to Holmes fully satisfied their obligations under the Park Place Policy.  The Title Companies address the contract claims of FSB and Holmes together because the title insurance policies issued to them are based on the same standardized form developed and approved by the American Land Title Association ("ALTA") in 2006.

### Introduction

The Court pauses here to provide an overview of the procedural posture of the Adversary insofar as the pre-trial proceedings relate to FSB and Holmes.  The Motion is the third of three

motions that the Title Companies have filed in the Adversary seeking partial summary judgment on claims of FSB.  In the first motion against FSB, Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Response in Opposition to First Security Bank's Motion for Partial Summary Judgment and Cross-Motion for Partial Summary Judgment (the "First Contract Motion") (Adv. Dkt. 210), the Title Companies sought summary judgment on FSB's claims for breach of contract.  In their second motion against FSB, Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Motion for Partial Summary Judgment (the "Tort Motion") (Adv. Dkt. 301), the Title Companies sought summary judgment on various tort claims asserted by FSB and other banks.  In the present Motion, the Title Companies incorporate by reference the arguments that they raised in the First Contract Motion in support of their second request for summary judgment on FSB's claims for breach of contract.

The First Contract Motion differs from the present Motion in two ways.  In the Motion, the Title Companies include a breach of contract claim alleged by Holmes.  They apparently did so because the title insurance policies they sold FSB and Holmes are substantially similar in that they are based on the same ALTA policy form.  Also, the Title Companies include in the Motion their request for partial summary judgment not only on FSB's breach of contract claims but also on FSB's extra-contractual claims of (1) breach of the duty of good faith and fair dealing and (2) bad faith. In separate opinions, the Court has disposed of the Title Companies' requests for partial summary

judgment on FSB's breach of contract claims[6] and FSB's tort claims.[7]  This opinion addresses only the Title Companies' request for summary judgment on FSB's extra-contractual claims of breach of the duty of good faith and fair dealing, and bad faith.

As to Holmes, the Motion is the second of two motions that the Title Companies have filed in the Adversary seeking partial summary judgment.  In the Tort Motion, the Title Companies sought partial summary judgment on various tort claims asserted by Holmes.[8]  In the present Motion, the Title Companies seek partial summary judgment on the claims asserted by Holmes for breach of contract and breach of the duty of good faith and fair dealing.  This opinion addresses only these later claims.

## Issues

 The Court must determine if the material facts establish the existence of a genuine dispute as to whether the Title Companies breached the duty of good faith and fair dealing as to the Brashear Policy and/or the Twin City Policy by failing to compensate FSB for its full measure of losses and damages resulting from the title defects in Tracts 10O and 10E, and Tract TC-2B.  Likewise, the Court must make the same determination as to whether the Title Companies breached the Park Place Policy and/or the Nottaway Policy by failing to compensate Holmes for its full measure of losses and

---

[6] The Court held that because FSB does not dispute that the Title Companies had in fact invoked the "unsuccessful cure" provisions of the Brashear Policy and Twin City Policy, the Title Companies were entitled to partial summary judgment as a matter of law on FSB's breach of contract claims.  (Adv. Dkt. 388).

[7] The Court granted summary judgment in favor of the Title Companies on FSB's tort claims of (1) negligent failure to audit, monitor, or supervise Charles Evans, (2) negligent retention of Charles Evans; and (3) civil aiding and abetting. (Adv. Dkt. 389).

[8] The Court granted summary judgment in favor of the Title Companies on Holmes's tort claim of negligent failure to audit, monitor, or supervise Charles Evans. (Adv. Dkt. 389).

damages resulting from the title defects in Tract 1F and Tract 1G and/or breached the duty of good faith and fair dealing implied in the Park Place Policy and/or the Nottaway Policy.

## Discussion

### A.      Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a),[9] made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, summary judgment is appropriate when viewing the evidence in the light most favorable to the nonmoving party, the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, if any, show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  By its express terms, Rule 56(a) provides for partial summary judgment. Fed. R. Civ. P. 56(a).  Once the moving party has made its required showing, Rule 56(c)(1) further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Summary judgment . . . serves, among other ways, to root out, narrow, and focus the issues, if not resolve them completely."  Calpetco 1981 v. Marshall Exploration, Inc., 989 F.2d 1408, 1415

---

[9] Pursuant to the Rules Enabling Act, 28 U.S.C. § 2072, Rule 56 of the Federal Rules of Civil Procedure was amended, as of December 1, 2010.  The amendment did not change the standard for granting summary judgment.  *See* Fed. R. Civ. P. 56 advisory committee's note to 2010 Amendments ("The standard for granting summary judgment remains unchanged.").

(5th Cir. 1993).  The effect of a partial summary judgment, if granted, is "to lessen the length and complexity of trial on the remaining issues "all to the advantage of the litigants, the courts, those waiting in line for trial, and the American public in general."  Id.  Ultimately, the role of this Court is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249; see Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).  Even absent a genuine issue, the Court has the discretion to deny summary judgment to allow parties to proceed to trial so that the record might be more fully developed.  See Kunin v. Feofanov, 69 F.3d 59, 62 (5th Cir. 1995); Black v. J.I. Case Co., 22 F.3d 568, 572 (5th Cir. 1994); Veillon v. Exploration Services, Inc., 876 F.2d 1197, 1200 (5th Cir. 1989).  When, as here, both parties have filed motions for summary judgment, the Court must rule on each motion on an individual and separate basis.  Shaw Constructors v. ICF Kaiser Engineers, Inc., 395 F.3d 533, 538-39 n.8 (5th Cir. 2004).

**B.      Pertinent Title Insurance Policy Provisions**

The title insurance policies at issue here contain identical terms and provisions, with the exception of the attached schedules.

### 1.      Covered Risks

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, MISSISSIPPI VALLEY TITLE INSURANCE COMPANY, a Mississippi corporation, and OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY, a Minnesota corporation, (collectively, the "Company") insure as of Date of Policy and, to the extent stated in Covered Risks 11, 13, and 14, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1.      Title being vested other than as stated in Schedule A.

2.      Any defect in or lien or encumbrance on the Title . . . .

* * *

9.      The invalidity or unenforceability of the lien of the Insured Mortgage upon the Title. . . .

10.    The lack of priority of the lien of the Insured Mortgage upon the Title over any other lien or encumbrance.

* * *

14.    The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.

(Title Companies Exs. 1-2).

**2.    Conditions**

1.    DEFINITION OF TERMS

The following terms when used in this policy mean:

(a)    "Amount of Insurance": The amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b) or decreased by Section 10 of these Conditions.

(b)    "Date of Policy": The date designated as "Date of Policy" in Schedule A.

* * *

(d)    "Indebtedness": The obligation secured by the Insured Mortgage . . . and if that obligation is the payment of a debt, the Indebtedness is the sum of:

(i)    the amount of the principal disbursed as of Date of Policy;

(ii)    the amount of the principal disbursed subsequent to Date of Policy;

* * *

(iv)    interest on the loan;

* * *

(vi)    the expenses of foreclosure and any other costs of enforcement;

* * *

(viii)    the amounts to pay taxes and insurance;

* * *

5.    DEFENSE AND PROSECUTION OF ACTIONS

(a)    Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. . . .

(b)    The Company shall have the right . . . , at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title or the lien of the Insured Mortgage, as insured, or to prevent or reduce loss or damage to the Insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.

* * *

8.    DETERMINATION AND EXTENT OF LIABILITY

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a)    The extent of liability of the Company for loss or damage under this policy shall not exceed the least of
      (i)    the Amount of Insurance,
      (ii)    the Indebtedness,
      (iii)    the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy, . . . .

(b)    If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title or the lien of the Insured Mortgage, as insured,
      (i)    the Amount of Insurance shall be increased by 10%, and
      (ii)    the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made

by the Insured Claimant or as of the date it is settled and paid.

\* \* \*

(d)      In addition to the extent of liability under (a), (b), and (c), the Company will also pay those costs, attorneys' fees, and expenses incurred in accordance with Sections 5 and 7 of these Conditions.

9.      LIMITATION OF LIABILITY

(a)      If the Company establishes the Title, or removes the alleged defect, lien, or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim of Unmarketable Title, or establishes the lien of the Insured Mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

\* \* \*

11.      PAYMENT OF LOSS

When liability and the extent of loss or damage have been definitely fixed in accordance with these Conditions, the payment shall be made within 30 days.

(Title Companies Exs. 1-2).

**C.      FSB**

FSB asserts claims against the Title Companies for breach of the duty of good faith and fair dealing and for bad faith arising out of the handling of its claims under the Brashear Policy and the Twin City Policy.

**1.      Breach of Duty of Good Faith and Fair Dealing**

Mississippi provides for "extra-contractual damages" when an insurance company tortiously breaches it contract.  Essinger v. Liberty Mut. Fire Ins. Co., 529 F.3d 264, 271 (5th Cir. 2008). Extra-contractual damages, however, are not warranted where the insurer can demonstrate an arguable, good-faith basis for denial of a claim.  United Servs. Auto Ass'n v. Lisanby, 47 So. 3d 1172, 1178 (Miss. 2010).  An "arguable reason" is "nothing more than an expression indicating the act or acts

of the alleged tortfeasor do not rise to [the] heightened level of an independent tort." Caldwell v. Alfa Ins. Co., 686 So. 2d 1092, 1096 (Miss. 1996).

FSB challenges the basis for the Title Companies' attempt to cure the title defects on Tracts 10E and 10O, and Tract TC-2B, given that FSB never had a valid lien on the property and, therefore, that there was never any possibility for curative actions. According to FSB, the Title Companies' attempt was "illusory," "frivolous," and nothing more than "a conscious effort" on their part to invoke a later valuation date to the detriment of FSB. (FSB Response Brief at 7). The manner in which the Title Companies litigated the title defects and the pointlessness of those efforts, according to FSB, supports its claim. The Court finds that there are issues of material fact regarding the Title Companies' efforts to cure the title defects that preclude summary judgment in their favor on FSB's claim for breach of the duty of good faith and fair dealing.

## 2.    Bad Faith

In Mississippi, in order to recover punitive damages against an insurance company for its "bad-faith" refusal of coverage, the insured must demonstrate (1) that there was no arguable or legitimate reason to deny coverage and (2) that the insurer acted willfully, maliciously, or with gross and reckless disregard for the insured's rights. Liberty Mut. Ins. Co. v. McKneely, 862 So. 2d 530, 533 (Miss. 2003). As a preliminary matter, the insured must also demonstrate that the insurance company in fact owed the obligation. Essinger, 529 F.3d at 271.

The Court has already found that the Title Companies fulfilled their obligations under the Brashear Policy and the Twin City Policy by attempting to cure the title defects on Tracts 10E and 10O, and Tract TC-2B, albeit unsuccessfully, and by paying FSB the fair market value of Tracts 10E and 10O, and Tract TC-2B, as of the date FSB's claims were made or paid. (Adv. Dkt. 388). Given

that FSB has not shown that the Title Companies owe any additional obligations under the Brashear Policy and the Twin City Policy, punitive damages are unavailable to FSB as a matter of law, and the Title Companies are entitled to partial summary judgment on FSB's bad faith claims.

**D.     Holmes**

Holmes claims that the Title Companies breached the Nottaway Policy by failing to compensate Holmes for all of its losses and damages, limited only by the face amount of insurance. Holmes further claims that the Title Companies breached the Park Place Policy by failing to indemnify it for its loan deficiencies and attorney's fees. These breaches, according to Holmes, rise to the level of bad faith or an independent tortious breach of contract.

**1.     Nottaway Policy**

**a.     Breach**

The Title Companies paid Holmes $525,000.00, the fair market value of Tract 1F, after they were unable to cure the title defect. They had a contractual right to attempt to cure the title defect by the express terms of ¶5(b) of the Nottaway Policy. Moreover, their attempt triggered the provisions of ¶8(b)(ii), that established the date for measuring Holmes's losses as the date the claim was made or paid. Holmes has not presented any evidence that would render application of the clear and unambiguous language of ¶8(b)(ii) in dispute. Although Holmes alleges that it was never provided an opportunity to choose the valuation date, the evidence is undisputed that the value of Tract 1F was the same regardless of which of the two dates is applied. The Court, therefore, finds that the Title Companies are entitled to partial summary judgment as to Holmes's claim for breach of the Nottaway Policy.

### b.      Breach of Duty of Good Faith and Fair Dealing

As mentioned previously, Mississippi provides for "extra-contractual damages" when an insurance company tortiously breaches it contract.  Essinger, 529 F.3d at 271.  Extra-contractual damages, however, are not warranted where the insurer can demonstrate an arguable, good-faith basis for denial of a claim.  Lisanby, 47 So. 3d at 1178.  Unlike FSB, Holmes does not contest the basis for the Title Companies' attempt to cure the title defect on Tract 1F.  In the absence of a fact issue, the Court awards partial summary judgment in favor of the Title Companies on Holmes's claim for breach of the duty of good faith and fair dealing with respect to Tract 1F.

### c.      Bad Faith

The Court has found that the Title Companies fulfilled their obligations under the Nottaway Policy by attempting to cure the title defects on Tract 1F, albeit unsuccessfully, and by paying the fair market value of Tract 1F as of the date Holmes's claims were made or paid.  Given that Holmes has not shown that the Title Companies owe any additional obligations with respect to Tract 1F, punitive damages are unavailable to Holmes as a matter of law, and the Title Companies are entitled to partial summary judgment on Holmes's bad faith claim.

### 2.      Park Place Policy

### a.      Breach

Although the Title Companies cured the title defect regarding Tract 1G by conveying Tract 1G to Holmes free and clear of liens and encumbrances, Holmes alleges that it is entitled to additional payments under the Park Place Policy.[10]  The Title Companies do not deny that Holmes

---

[10] Unlike First Alliance Bank, Patriot Bank, and First State Bank, Holmes does not argue that the conveyance did not cure the title defect because of the lack of a right of access and violations of subdivision regulations.

sustained additional monetary losses, but insist that payment of those losses exceeds the coverage of the Park Place Policy.

Under ¶5(b), the Title Companies had a "right . . . to do any . . . act . . . to establish the Title . . . as insured . . . ." Once the Title Companies establish title or remove the title defect, ¶9(a) of the Park Place Policy states that the Title Companies "have fully performed [their] obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured." Accordingly, the Court finds that the Title Companies are entitled to partial summary judgment as to Holmes's claim for breach of the Park Place Policy.

### b.    Breach of Duty of Good Faith and Fair Dealing

For the same reason the Court granted the Title Companies partial summary judgment on Holmes's breach of the duty of good faith and fair dealing with respect to the Nottaway Policy, the Court also grants summary judgment on Holmes's similar claim regarding the Park Place Policy.

### c.    Bad Faith

The Court has already found that the Title Companies fulfilled their obligations under the Park Place Policy by curing the title defect on Tract 1G. Given that the Title Companies owe no additional obligation to Holmes under the Park Place Policy with respect to Tract 1G, punitive damages are unavailable to Holmes as a matter of law, and the Title Companies are entitled to partial summary judgment on Holmes's bad faith claim.

### Conclusion

In conclusion, the Court finds that the Motion should be granted in part and denied in part. The Court finds that there are no disputed issues of material fact and concludes that the Title Companies are entitled to partial summary judgment as a matter of law on the following claims: (1)

Page 22 of  23

FSB's bad faith claims; (2) Holmes's breach of contract claim under the Nottaway Policy; (3) Holmes's bad faith claims; and (4) Holmes's claim for breach of the duty of good faith and fair dealing with respect to the Nottaway Policy and the Park Place Policy.  The Court further finds that there are disputed issues of material fact that preclude the entry of partial summary judgment in favor of the Title Companies on FSB's claim for breach of the duty of good faith and fair dealing with respect to the Brashear Policy and the Twin City Policy.

SO ORDERED.

Neil P. Olack
United States Bankruptcy Judge
Dated:  December 15, 2011