## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

    JON CHRISTOPHER EVANS,                         CASE NO. 09-03763-NPO

    DEBTOR.                                              CHAPTER 7

JOINTLY ADMINISTERED WITH RELATED CASES


DEREK A. HENDERSON, TRUSTEE                     PLAINTIFF
FOR THE BANKRUPTCY ESTATE OF
JON CHRISTOPHER EVANS AND
JOINTLY ADMINISTERED RELATED
CASES

V.                                                     ADV. PROC. NO.  10-00005-NPO

COMMUNITY BANK OF MISSISSIPPI,                   DEFENDANTS
BANCORPSOUTH BANK, FIRST BANK,
STATE BANK & TRUST COMPANY,
BANK OF YAZOO CITY, BANK OF THE
SOUTH, CITIZENS NATIONAL BANK
OF MERIDIAN, HOLMES COUNTY
BANK & TRUST COMPANY, BANK
FIRST FINANCIAL SERVICES,
RENASANT BANK, METROPOLITAN
BANK, FIRST COMMERCIAL BANK,
NATIONAL BANK OF COMMERCE,
GUARANTY BANK & TRUST
COMPANY, CADENCE BANK,
BRITTON & KOONTZ NATIONAL
BANK, WACHOVIA BANK, SOUTH
TRUST BANK, OMNI BANK,
MERCHANTS & PLANTERS BANK,
FIRST BANK OF MCCOMB, HERITAGE
BANKING GROUP, THE CARTHAGE
BANK, BANKPLUS, UNION PLANTERS
BANK, PEOPLES BANK & TRUST
COMPANY, FIRST TRUST BANK FOR
SAVINGS, FIRST ALLIANCE BANK,
FIRST STATE BANK, FIRST SECURITY
BANK, PATRIOT BANK, TRUST ONE

**BANK, FIRST TENNESSEE BANK,
BANK OF BARTLETT, BANK OF
AMERICA, MERCHANTS & FARMERS
BANK, BANK OF FOREST, COPIAH
BANK, CONSUMER NATIONAL BANK,
REGIONS BANK, MISSISSIPPI VALLEY
TITLE INSURANCE COMPANY AND
OLD REPUBLIC NATIONAL TITLE
INSURANCE COMPANY**

**MEMORANDUM OPINION AND ORDER ON MISSISSIPPI VALLEY TITLE
INSURANCE COMPANY AND OLD REPUBLIC NATIONAL
TITLE INSURANCE COMPANY'S MOTION FOR SUMMARY
JUDGMENT ON INSURANCE CONTRACT CLAIMS OF
<u>MERCHANTS & FARMERS BANK AND STATE BANK & TRUST CO.</u>**

There came on for consideration (1) Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Motion for Summary Judgment on Insurance Contract Claims of Merchants & Farmers Bank and State Bank & Trust Co. (the "Motion") (Adv. Dkt. 320)[1] and Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Memorandum Brief in Support of Their Motion for Summary Judgment on Insurance Contract Claims of Merchants & Farmers Bank and State Bank & Trust Co. (Adv. Dkt. 321) filed by Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company (the "Title Companies"); (2) Response of State Bank and Trust Company to Title Companies' Motion for Summary Judgment on Insurance Contract Claims (Adv. Dkt. 350) and Brief of State Bank and Trust Company in Response to Title Companies' Motion for Summary Judgment on Insurance Contract Claims (Adv. Dkt. 351) filed by State Bank & Trust Company ("State Bank");

---

[1] Citations to the record are as follows: (1) citations to docket entries in this adversary proceeding are cited as "(Adv. Dkt. ____)" and (2) citations to docket entries in the main bankruptcy case are cited as "(Case No. 09-03763-NPO, Dkt. ____)".

(3) Response to Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Motion for Summary Judgment on Insurance Contract Claims [Dkt. 320] (Adv. Dkt. 354) and Brief of Merchants & Farmers Bank in Response to Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Motion for Summary Judgment on Insurance Contract Claims (Adv. Dkt. 355) filed by Merchants & Farmers Bank ("M&F"); and (4) Title Companies' Reply Brief in Support of Motion for Summary Judgment on the Contract Claims of Merchants & Farmers Bank (Adv. Dkt. 381) filed by the Title Companies in the above-referenced adversary proceeding (the "Adversary").

Having reviewed the pleadings and all the exhibits attached thereto, together with other pleadings on file and the briefs submitted by the parties, the Court finds for the reasons set forth below that the Motion should be granted in part and denied in part.[2]

**Jurisdiction**

This Court has jurisdiction over the subject matter of and the parties to this proceeding pursuant to 28 U.S.C. § 1334. This matter is a core proceeding[3] as defined in 28 U.S.C.

---

[2] The following constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

[3] State Bank and M&F allege in cross-claims they filed against the Title Companies that this matter is a core proceeding. *See* Amended Crossclaim of State Bank & Trust Company (Adv. Dkt. 186); Amended Crossclaim Against Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company (Adv. Dkt. 197). In their responses, however, the Title Companies allege that "[t]his matter is non-core under 28 U.S.C. § 157(b)(2)." *See* Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Answer and Affirmative Defenses to Amended Cross-Claim of State Bank & Trust Company (Adv. Dkt. 208); Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Answer and Affirmative Defenses to Amended Crossclaim of Merchants & Farmers Bank (Adv. Dkt. 209). The Court need not address the core/non-core distinction because the parties clearly have consented to the final adjudication by this Court of all of their claims. *See* 28 U.S.C. § 157(c)(2); *see also* Oxford Expositions, LLC v. Questex Media

§ 157(b)(2)(K). Notice of the Motion was proper under the circumstances.

## Facts

In making its determination of facts on the Motion, the Court must view the evidence in the light most favorable to the non-moving parties. McPherson v. Rankin, 736 F.2d 175, 178 (5th Cir. 1984). With that standard in mind, the Court finds that there are no genuine issues with respect to the following facts set forth in the briefs submitted to the Court:

**Title Insurance Policies**

1.     The breach of contract claims of M&F and State Bank involve three title insurance policies issued by the Title Companies, each one pertaining to a different parcel of land.

    **a.**     **Madison Avenue Policy and M&F**

2.     In April, 2007, M&F loaned $1,360,529.00 to Madison Avenue Development Company, LLC ("Madison Avenue"), a company owned and/or controlled by Jon Christopher Evans ("Chris Evans") and/or his brother Charles H. Evans ("Charles Evans") (Title Companies Ex. 2).[4]

3.     To secure the loan, Madison Avenue executed a deed of trust in favor of M&F on certain real property located in Madison County, Mississippi, known as Tracts 3A and 3F.

4.     The Title Companies issued title policy number M-306816 dated July 10, 2007, which

---

Group (In re Oxford Expositions, LLC), No. 11-01095-DWH, 2011 WL 4074028 (Bankr. N.D. Miss. Sept. 13, 2011) (holding that power to consent under 28 U.S.C. § 157(c)(2) remains undisturbed after Stern v. Marshall, 131 S. Ct. 2594 (2011)). Notably, the Title Companies have not mentioned in any of their numerous pre-trial filings that they have withdrawn their consent to this Court's authority. See Fed. R. Bankr. P. 7012(b).

[4] The exhibits submitted by the Title Companies in support of the Motion are cited as "(Title Companies Ex. ____)". The exhibits submitted by State Bank are cited as "(State Bank Ex. ____)". M&F incorporated by reference the exhibits submitted by State Bank and otherwise submitted exhibits already in the record.

insured M&F's lien on Tracts 3A and 3F as a first priority lien (the "Madison Avenue Policy") (Title Companies Ex. 1).

5. M&F had a valid second priority lien, not a valid first priority lien, on Tract 3A and did not have any lien on Tract 3F. M&F submitted a title insurance claim to the Title Companies under the Madison Avenue Policy on October 1, 2009. (Title Companies Ex. 3).

6. The Title Companies paid M&F $450,000.00 based on the appraised value of the lien on Tract 3F, as insured, as of the date M&F submitted a claim under the Madison Avenue Policy.

7. The fair market value of Tract 3F, as of the date of M&F's claim and the date of the payment to M&F, was $450,000.00, assuming a hypothetical condition (Title Companies Ex. 8).

8. Through an affiliate, the Title Companies purchased Tract 3A and offered to convey Tract 3A to M&F, but M&F chose to receive $265,000.00 instead. That amount was the sales price paid by the Title Companies for Tract 3A, plus a 10% premium. M&F agreed that the payment, made on October 5, 2010, had "the same effect as a conveyance of title to the insured property to Merchants & Farmers Bank." (Title Companies Ex. 4). The parties also acknowledged that the payment was accepted "with reservation of all rights, claims and defenses of the parties under the Title Policy." (Title Companies Ex. 4).

9. According to M&F, the fair market value of Tract 3F as of the date of the Madison Avenue Policy was at least, $1,360,529.00, the principal amount of the loan.

10. M&F contends that after applying the Title Companies' payments of $715,000.00, an additional $645,529.00 remains due on the balance of the loan amount, not including attorney's fees.

  **b.**  **Cedar Lake Policy and State Bank**

  11.  Cedar Lake Investors, LLC ("Cedar Lake"), an entity owned and/or controlled by Chris Evans and/or Charles Evans, borrowed $352,000.00 from State Bank, formerly known as Consumer National Bank,[5] on September 23, 2005.

  12.  To secure the indebtedness, Cedar Lake executed deeds of trust in favor of State Bank on certain property located in Madison County, Mississippi, known as Tract 3E.

  13.  The Title Companies issued State Bank a title insurance, policy number M-306538, dated January 27, 2006, which insured State Bank's lien on Tract 3E (the "Cedar Lake Policy") (Title Companies Ex. 5).

  14.  State Bank's lien on Tract 3E was first-in-time and not subject to any prior liens or encumbrances. The deeds of trust executed by Cedar Lake, however, contained typographical errors in the legal descriptions of Tract 3E. Sometime after September 2009, State Bank submitted a title insurance claim to the Title Companies under the Cedar Lake Policy.

  15.  After reaching an agreement with the Trustee, State Bank filed on December 3, 2010, the Motion for Approval of Agreed Order of Abandonment and Granting Relief from Automatic Stay as to State Bank & Trust Company on Tract 3E (Case No. 09-03763-NPO, Dkt. 962). State Bank asked that the automatic stay be terminated and that Tract 3E be abandoned to allow State Bank to exercise its rights to obtain possession of Tract 3E. On December 20, 2010, the Court entered the Agreed Order of Abandonment and Granting Relief from Automatic Stay as to State Bank and Trust Company on Tract 3E (Case No. 09-03763-NPO, Dkt. 978).

---

[5] Because it makes no difference to the outcome of the issues and for ease of reference, the Court will refer only to State Bank from this point forward.

16. The Title Companies obtained an Agreed Final Judgment of Reformation from the Chancery Court of Madison County, Mississippi, in civil action number 2009-1535, on May 6, 2011, which reformed and corrected the legal descriptions. (State Bank Ex. 3). The correction allowed State Bank to foreclose on Tract 3E.

17. State Bank scheduled the foreclosure on Tract 3E for June 30, 2011. (Title Companies Ex. 7).

### c. 463 Development Policy and State Bank

18. On August 30, 2007, State Bank loaned $1,302,914.50 to 463 Development Company, LLC ("463 Development"), a company controlled by Chris Evans.

19. To secure the loan, 463 Development executed a deed of trust in favor of State Bank on property located in Madison County, Mississippi, known as Tracts 3B and 3F.

20. The Title Companies issued State Bank a title insurance policy, number M-306873, dated November 7, 2007, which insured State Bank's liens on Tracts 3B and 3F (the "463 Development Policy") (Title Companies Ex. 5).

21. Because State Bank did not have an enforceable lien on Tracts 3B and 3F, it submitted a title insurance claim to the Title Companies under the 463 Development Policy.

22. The Title Companies reached an agreement with Derek A. Henderson, the duly appointed chapter 7 trustee for the bankruptcy estate of Chris Evans and jointly-administered related cases (the "Trustee"), in which the Trustee agreed to recognize that State Bank had a first and valid liens on Tracts 3B and 3F in exchange for payment of $182,050.00. (Order Granting Motion to Approve Title Resolution Agreement, including (I) Conditional Sale of Property Free and Clear of Liens, Interests, Encumbrances and Claims, (II) Recognition of Equitable Liens, (III) Certain

Distributions in Respect of Certain Unsecured Claims, (IV) Resolution of Certain Litigation, and (V) Other Relief (the "Title Resolution Order"), Case No. 09-03763, Dkt. 683).

23. State Bank acknowledged that the "Title Companies have caused, through the Title Resolution Order, Tracts 3B and 3F to be deeded to 463 Development." (Adv. Dkt.186).

24. State Bank obtained "good and clean title" to Tracts 3B and 3F. (Title Companies Ex. 6).

25. State Bank foreclosed on the loan for Tracts 3B and 3F on October 8, 2010. (Title Companies Ex. 7). State Bank incurred a loss of $572,353.51, the amount of the loan deficiency. (State Bank Ex. 4).

**Adversary Proceeding**

26. On January 18, 2010, the Trustee filed a First Amended Complaint (Adv. Dkt. 3) against M&F, State Bank, numerous other banks, and the Title Companies. The Trustee asked the Court to determine the extent, validity, and priority of liens granted by entities controlled by Chris Evans on multiple tracts of real property. The dispute here concerns parcels of land that comprise Tract 3.

    **a.    M&F**

27. On May 4, 2011, M&F filed an Amended Crossclaim Against Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company (Adv. Dkt. 197). M&F alleged that the Title Companies breached the Madison Avenue Policy by failing adequately to indemnify M&F for all of its losses or to cure the title defects. M&F asserted an extra-contractual claim for breach of the obligation of good faith and fair dealing in claims handling. In addition, M&F alleged the following tort claims: (1) negligent supervision and retention of Charles Evans as

an "approved attorney," and (2) aiding and abetting Charles Evans. The Title Companies filed Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Answer and Affirmative Defenses to Amended Crossclaim of Merchants & Farmers Bank (Adv. Dkt. 209) on May 13, 2011.

### b. State Bank

28. On April 29, 2011, State Bank filed an Amended Crossclaim of State Bank & Trust Company (Adv. Dkt. 186). State Bank alleged that the Title Companies breached the Cedar Lake Policy by failing to cure errors in the legal description of Tract 3E in a reasonably diligent manner and by refusing to indemnify State Bank for all losses and damages for which coverage was provided, including its outstanding indebtedness and attorney's fees. State Bank alleged that the Title Companies breached the 463 Development Policy by refusing to indemnify State Bank for its loan deficiency and attorney fees. Also, State Bank alleged that the Title Companies negligently failed to audit, supervise, and monitor Charles Evans. According to State Bank, the Title Companies' breaches amounted to bad faith. The Title Companies filed Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Answer and Affirmative Defenses to Amended Cross-claim of State Bank & Trust Company (Adv. Dkt. 208) on May 13, 2011.

### c. Title Companies

29. The Title Companies filed the Motion on August 26, 2011. They seek partial summary judgment on the insurance contract claims of breach of contract, bad faith, and breach of the covenant of good faith and fair dealing asserted by State Bank and M&F. The Title Companies address the contract claims of M&F and State Bank together in the Motion because all three title

insurance policies at issue here are based on the same standardized form developed and approved by the American Land Title Association ("ALTA") in 1992.

**Introduction**

The Court pauses here to discuss the procedural posture of the Adversary insofar as M&F and State Bank are concerned. The Motion is the second of two motions that the Title Companies have filed in the Adversary seeking partial summary judgment on claims asserted by M&F and State Bank. In their first motion, Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company's Motion for Partial Summary Judgment (Adv. Dkt. 303), the Title Companies seek partial summary judgment on: (1) M&F's tort claims of aiding and abetting, negligent supervision, and negligent retention and (2) State Bank's tort claim of negligent failure to audit, monitor, or supervise. In this opinion, the Court disposes of the Title Companies' request for partial summary judgment only on the insurance contract claims of M&F and State Bank.

**Issue**

The Court must determine if the material facts establish the existence of a genuine dispute as to whether the Title Companies breached the Madison Avenue Policy, the Cedar Lake Policy, and/or the 463 Development Policy by failing to compensate State Bank and/or M&F their full measure of losses and damages resulting from the title defects in Tract 3A, 3B, 3E, and 3F.

**Discussion**

The gist of the legal dispute between State Bank, M&F, and the Title Companies is whether the Title Companies fulfilled their obligations under the title insurance policies as a matter of law by curing the title defects and paying M&F its claim. *See* Architex Ass'n v. Scottsdale Ins. Co., 27 So. 3d 1148, 1156 (Miss. 2010) (under Mississippi law the interpretation of an insurance policy is

a question of law).

A.     **Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(a),[6] made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, summary judgment is appropriate when viewing the evidence in the light most favorable to the nonmoving party, the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, if any, show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). By its express terms, Rule 56(a) provides for partial summary judgment. Fed. R. Civ. P. 56(a). Once the moving party has made its required showing, Rule 56(c)(1) further provides, in relevant part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

"Summary judgment . . . serves, among other ways, to root out, narrow, and focus the issues, if not resolve them completely." Calpetco 1981 v. Marshall Exploration, Inc., 989 F.2d 1408, 1415 (5th Cir. 1993). The effect of a partial summary judgment, if granted, is to lessen the length and complexity of trial on the remaining issues, "all to the advantage of the litigants, the courts, those

---

[6] Pursuant to the Rules Enabling Act, 28 U.S.C. § 2072, Rule 56 of the Federal Rules of Civil Procedure was amended, as of December 1, 2010. The amendment did not change the standard for granting summary judgment. *See* Fed. R. Civ. P. 56 advisory committee's note to 2010 Amendments ("The standard for granting summary judgment remains unchanged.").

waiting in line for trial, and the American public in general." Id. Ultimately, the role of this Court is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249; see Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000). Even in the absence of a genuine issue, the Court has the discretion to deny motions for summary judgment and allow parties to proceed to trial so that the record might be more fully developed. See Kunin v. Feofanov, 69 F.3d 59, 62 (5th Cir. 1995); Black v. J.I. Case Co., 22 F.3d 568, 572 (5th Cir. 1994); Veillon v. Exploration Services, Inc., 876 F.2d 1197, 1200 (5th Cir. 1989).

**B.      Pertinent Title Insurance Policy Provisions**

All three title insurance policies at issue contain identical terms and provisions, with the exception of the attached schedules.

### 1.     Covered Risks

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, MISSISSIPPI VALLEY TITLE INSURANCE COMPANY, a Mississippi Corporation, and OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY, a Minnesota Corporation, together herein called the Company . . ., insure, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the Insured by reason of:

1.      Title to the estate or interest described in Schedule A being vested other than as stated therein;

2.      Any defect in or lien or encumbrance on the title;

3.      Unmarketability of the title;

4.      Lack of a right of access to and from the land;

5.      The invalidity or unenforceability of the lien of the insured mortgage upon the title;

(Title Companies Exs. 1 & 5).

**2. Exclusions from Coverage**

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; . . .

(b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

\* \* \*

3. Defects, liens, encumbrances, adverse claims, or other matters:

(a) created, suffered, assumed or agreed to by the Insured claimant;

(b) not known to the Company, not recorded in the public records at Date of Policy, but known to the Insured claimant and not disclosed in writing to the Company by the Insured claimant prior to the date the Insured claimant became an insured under this policy;

(Title Companies Exs. 1 & 5).

**3. Conditions and Stipulations**

*4. Defense and Prosecution of Actions, Duty of Insured Claimant to Cooperate.*
\* \* \*
(b) The Company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as Insured, or to prevent or reduce loss or damage to the Insured.

\* \* \*
*7. Determination and Extent of Liability.*

This policy is a contract of indemnity against actual monetary loss or damage

sustained or incurred by the Insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.

   (a) The liability of the Company under this policy shall not exceed the least of

   (i) the Amount of Insurance stated in Schedule A, or, if applicable, the amount of insurance as defined in Section 2(c) of these Conditions and Stipulations;

   (ii) the amount of the unpaid principal indebtedness secured by the insured mortgage as limited or provided under Section 8 of these Conditions and Stipulations or as reduced under Section 8 of these Conditions and Stipulations, at the time the loss or damage insured against by this policy occurs, together with interest thereon; or

   (iii) the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy.

*8. Limitation of Liability.*

   (a) If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land or cures the claim of unmarketability of title, or otherwise establishes the lien of the insured mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

(Title Companies Exs. 1 & 5).

  **4. Exceptions from Coverage**

Schedule B-I

This Policy does not insure against loss or damage by reason of the following:

* * *

Item 3. Rights of parties in possession, deficiency in quantity of land, boundary line disputes, encroachments, roadways, unrecorded servitudes or easements, any matter not of record including lack of access which would be disclosed by an accurate survey and inspection of the property, and easements or other uses of subject property not visible from the surface.

(Title Companies Exs. 1 & 5, Schedule B-I).

**C.     Breach of Contract**

The Title Companies contend that they have fully performed their contractual obligations under the title insurance policies at issue. Specifically, they contend they resolved all of the covered losses of State Bank and M&F by curing the title defects or by paying their claims. The Court addresses the Motion with respect to the claims of State Bank and M&F separately below.

**1.     State Bank**

Regarding State Bank, the Title Companies argue that ¶8(a), known as the "Limitation of Liability" provision, expressly grants them the right to limit their liability by curing any title defect and that the undisputed facts in this matter show they succeeded in doing so. Specifically, through the Title Resolution Order, the Title Companies caused Tracts 3B and 3F to be deeded to 463 Development, the effect of which was to render valid State Bank's lien on Tracts 3B and 3F. Also, the Title Companies caused the Trustee to execute a modification agreement that corrected the erroneous legal descriptions of Tract 3E. According to the Title Companies, their liability is limited under ¶8(a) of the title insurance policies to the curative actions that they have already performed. They did not assume the risk of ensuring that State Bank's loans were paid off or that the real property that secured State Bank's loans would maintain its value in the marketplace. The Court addresses State Bank's breach of contract claim with respect to Tracts 3B and 3F separately from its breach of contract claim related to Tract 3E.

**a.     Tracts 3B and 3F**

State Bank maintains that the Title Companies are liable for the loan deficiency and attorney fees attributable to Tracts 3B and 3F, notwithstanding ¶8(a), because the title insurance policies are

contracts of indemnity against actual monetary loss or damage. State Bank's arguments echo those rejected by this Court in a separate adversary proceeding that involved the Title Companies. The Court there found language similar to ¶8(a) to be clear and unambiguous. G&B Investments, Inc. v. Henderson (In re Evans) ("Evans I"), No. 10-00040-NPO, 2011 WL 4712176, at *31-32 (Bankr. S.D. Miss. Oct. 7, 2011). State Bank has not pointed to any material disputed issue that would warrant a different outcome upon trial. The Court, therefore, concludes that the Title Companies fully performed their obligations and do not owe State Bank for any monetary losses or damages it may have sustained with regard to Tracts 3B and 3F.

    b.   **Tract 3E**

State Bank contends that the Title Companies' right to cure title defects is limited by the requirement in the "Limitation of Liability" provision that the Title Companies do so with "reasonable diligence." According to State Bank, the Title Companies unduly delayed correcting the legal description of Tract 3E and that this delay prevented State Bank from foreclosing on Tract 3E in a timely manner. State Bank submitted its claims to the Title Companies in September, 2009, but the Title Companies did not obtain the Agreed Final Judgment of Reformation until May 6, 2011, which is one and one-half years later. By then, the commercial real estate market in Madison County, Mississippi, had plummeted, according to State Bank. During the delay, State Bank hired its own attorney to obtain relief from the automatic stay in the main bankruptcy case to pursue reformation of the legal descriptions. State Bank seeks reimbursement from the Title Companies for the attorneys' fees it incurred in this endeavor.

The Court finds that State Bank has raised genuine issues of material fact as to whether the Title Companies acted with reasonable diligence, whether ¶8(a) limits the liability of the Title

Companies, and whether the Title Companies are liable for State Bank's attorneys' fees. For example, the Court notes that the Title Companies instituted state court litigation on behalf of State Bank only a few months after they received the claims but did not obtain the Agreed Final Judgment of Reformation until one and one-half years later.

### 2.     M&F

The Title Companies contend that they fully satisfied their obligations to M&F under the title insurance policy by paying M&F $715,000.00. The payment of $265,000.00 to M&F was tantamount to a conveyance of Tract 3A and a cure of the title defect. The payment of $450,000.00 to M&F represented the fair market value of Tract 3F as of January 2, 2010, as appraised by Van Duncan. The Title Companies contend that requiring them to pay M&F an additional $645,529.00 would constitute a windfall.

M&F insists that the title insurance policies obligate the title Companies to pay their full face amounts of coverage. M&F contends, among other things, that ¶7 is ambiguous because it fails to specify a date for determining the value of the property and maintains that the correct "valuation date" is the date the loan was made. In a separate adversary proceeding that involved the Title Companies, Evans I, 2011 WL 4712176, at *31-32, the Court addressed similar language and concluded that the valuation date in the title insurance policy at issue there was ambiguous. Likewise, the Court finds that the ambiguity in ¶7 in this matter precludes summary judgment in favor of the Title Companies.[7]

---

[7] The denial of summary judgment, however, does not foreclose the Title Companies from arguing at trial that M&F waived its rights under the title insurance policy by agreeing to accept payment in lieu of title to Tract 3A.

**D.     M&F's Claim for Breach of the Covenant of Good Faith and Fair Dealing**

Mississippi provides for "extra-contractual damages" when an insurance company tortiously breaches it contract. Essinger v. Liberty Mut. Fire Ins. Co., 529 F.3d 264, 271 (5th Cir. 2008). "Extracontractual damages, such as awards for emotional distress and attorneys' fees, are not warranted where the insurer can demonstrate an 'arguable, good-faith basis for denial of a claim.'" United Servs. Auto Ass'n v. Lisanby, 47 So. 3d 1172, 1178 (Miss. 2010).

Because of the presence of disputed facts regarding M&F's breach of contract claim, the Court finds sufficient reason to deny summary judgment to the Title Companies' on M&F's related claim for breach of the covenant of good faith and fair dealing.

**E.     State Bank's Bad Faith Claims**

In Mississippi, in order to recover punitive damages against an insurance company for its "bad-faith" refusal of insurance coverage, the insured must demonstrate (1) that there was no arguable or legitimate reason to deny coverage and (2) that the insurer acted willfully, maliciously, or with gross and reckless disregard for the insured's rights. Liberty Mut. Ins. Co. v. McKneely, 862 So. 2d 530, 533 (Miss. 2003). As a preliminary matter, a bad-faith refusal claim requires proof that the insurance company in fact owed the obligation. Essinger, 529 F.3d at 271.

**1.     Tracts 3B and 3F**

The Court has already found that by curing the title defects on Tracts 3B and 3F, the Title Companies fulfilled their obligations under the title insurance policies issued to State Bank. Given that State Bank has not demonstrated that the Title Companies owe any additional obligations with respect to Tracts 3B and 3F, punitive damages are not available to State Bank and the Title Companies are entitled to summary judgment on State Bank's bad faith claims with respect to Tracts

3B and 3F.

### 2. Tract 3E

State Bank also asserts a bad faith claim arising out of the Title Companies' delay of one and one-half years in correcting the legal descriptions of Tract 3E. Although State Bank submitted a claim to the Title Companies in September, 2009, they did not obtain the Agreed Final Judgment of Reformation until May 6, 2011. It appears, however, that the Title Companies initiated the state court action that resulted in the entry of the Agreed Final Judgment of Reformation on November 13, 2009.

Notably, State Bank does not assert that the Title Companies refused to correct the legal descriptions, but only that they committed bad faith by delaying the entry of a final judgment. In this way, the conduct of the Title Companies is akin to a bad faith claim for the delay of payment, rather than the denial of payment. The Mississippi Supreme Court in Caldwell v. Alfa Ins. Co., 686 So. 2d 1092 (Miss. 1996), addressed a bad faith claim for an insurer's delay in payment and there noted "that the Mississippi Supreme Court has been extremely reluctant to allow punitive damages in cases where the insurer did not deny coverage, but only disputed the amount of the claim or delayed payment." Id. at 1099. Here, there is an absence of evidence in the record suggesting that the Title Companies acted with malice. "[P]unitive damages are allowed only with caution and within narrow limits." Blue Cross & Blue Shield v. Maas, 516 So. 2d 495, 497 (Miss. 1987). The Title Companies are entitled to summary judgment on State Bank's bad faith claims with respect to Tract 3E.

### Conclusion

In conclusion, the Court finds that the Motion should be granted in part and denied in part. The Court finds that there are no disputed issues of material fact and concludes that the Title

Companies are entitled to partial summary judgment as a matter of law on the following claims: (1) State Bank's breach of contract claims related to the 463 Development Policy and Tracts 3B and 3F and (2) State Bank's bad faith claims related to Tracts 3B, 3E and 3F. The Court further finds that there are disputed issues of material fact that preclude the entry of partial summary judgment in favor of the Title Companies on the following claims: (1) State Bank's breach of contract claim related to the Cedar Lake Policy and Tract 3E; (2) M&F's breach of contract claim related to the Madison Avenue Policy and Tracts 3A and 3F; and (3) M&F's breach of the obligation of good faith and fair dealing in claims handling related to Tracts 3A and 3F.

SO ORDERED.

/s/ Neil P. Olack
Neil P. Olack
United States Bankruptcy Judge
Dated: December 15, 2011